**UNITED STATES of America**

v.

**Herbert B. KLEINBARD.**

**Crim. No. 71–328.**

United States District Court,
E. D. Pennsylvania.

Nov. 8, 1971.

Louis C. Bechtle, U. S. Atty., C. Oliver Burt III, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Stephen B. Potter, Sullivan, Potter & Roeberg, Wilmington, Del., for defendant.

## OPINION AND ORDER

HAROLD K. WOOD, District Judge.

Defendant Herbert B. Kleinbard, has moved to dismiss his indictment which charges him with the unlawful sale of a controlled stimulant drug. Defendant alleges that he has been denied his Sixth Amendment right to a speedy trial and that the delay between the time of the alleged offense and the time of his indictment constituted a denial of due process.

On May 4, 1970, defendant made a sale of 235 grams of methamphetamine to agents of the Bureau of Narcotics and Dangerous Drugs in Chadds Ford, Pennsylvania. He was not arrested at that time. He made another sale on August 20, 1970 in Wilmington, Delaware. Again no immediate arrest was made. On October 28, 1970, defendant was arrested on charges arising from the August 20 sale. He had at all times since May 4 been available for arrest. On November 20 a two-count indictment was obtained in the District Court for the District of Delaware which charged defendant with unlawful sales of a controlled stimulant drug on May 4, and August 20. The November 20 indictment constituted the first notice to defendant that he was being prosecuted for the May 4 sale.

On December 11, 1970, defendant moved to dismiss his indictment. On April 8, 1971, the Court dismissed Count II of the indictment, the Count charging the May 4 sale, for improper venue. The Court concluded that the May 4 sale, if made, was made in Pennsylvania and not Delaware. Defendant then entered a plea of guilty to Count I of the indictment. On May 27, 1971, he was indicted in this district for the May 4 sale.

Defendant does not deny that he made the May 4 sale. However he maintains that it was a result of entrapment. Specifically he alleges that he was unlawfully induced into making the sale by one Ayn Stern who served as a liaison between defendant and the government agents to whom he made the sale. Miss Stern was apparently an unwitting "agent" of the government, believing that the government agents were drug traffickers. She was arrested subsequent to defendant's arrest and on December 13, 1970 was committed to a mental health clinic.

In Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), the Court, in reversing a conviction because of prosecutorial delay, held that in determining whether such delay constitutes a denial of due process, a balance must be struck between the need of law enforcement officials to delay the prosecution and the prejudice to the defendant caused by the delay. The determination involves "accommodating the public interest in effective law enforcement with the accused's interest in the fairness of the criminal procedures by which the charge against him is determined." Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214, 218 (1966). After a full evidentiary hearing, we conclude, for reasons hereinafter stated, that the prejudice which accrued to defendant from the government's delay in arresting and indicting him outweighs the government's interest in delaying his

prosecution, and the motion to dismiss his indictment will be granted.

The government sets forth three reasons for the delay in prosecuting defendant. The first is that the agents who purchased the methamphetamine from defendant had been introduced to other narcotics dealers by Ayn Stern and by arresting Kleinbard they would have revealed their true identities to Miss Stern, thereby making her unwilling to assist them further. The second reason is that the agents sought to obtain information about defendant's source of supply. The third reason is that they sought to have defendant commit another offense.

We attach little merit to the last of these reasons. Moreover, even were we to accept it as a valid reason, the record clearly shows that defendant did commit another offense on August 20, 1970, and the agents still did not arrest him for more than two months and did not notify him of the May 4 charges for three months.

The agents' interests in seeking evidence of defendant's source of supply and in not breaking cover because of other narcotics investigations constitute valid law enforcement reasons for not arresting defendant immediately after the May 4 offense. However the government has failed to justify the length of its prosecutorial delay. The record indicates that there was a meeting between defendant and the agents on August 30, 1970, at which time the agents expressed their interest in meeting defendant's source of supply. Apparently this attempt was without success, for as early as September there was a discussion as to whether or not to arrest defendant. Nevertheless it was more than a month until he was, in fact, arrested and nearly another month until he was notified of the charge arising from the May 4 sale. Thus, while we conclude that the government has demonstrated a valid law enforcement interest in delaying the prosecution of defendant until September, 1970, it has failed to demonstrate the necessity of delaying it until November 20, six-and-a-half months after the May 4 sale. We therefore attach limited weight to the government's side of the balance.

■ Weighed against the government's interest in delaying the prosecution is the prejudice to defendant caused by the delay. The crucial question in evaluating such prejudice is whether the delay has increased the likelihood that a defendant will be erroneously convicted. United States v. Jones, 322 F.Supp. 1110 (E.D.Pa.1971). In the instant case, we conclude that this question must be answered in the affirmative.

Defendant has made a plausible claim of inability to recall the events leading to the May 4 sale. As his defense is one of entrapment, it is necessary for him to recall not merely his actions and whereabouts on the day of the sale, but also what inducements were made to him to elicit the illegal sale. Defendant testified that Ayn Stern made numerous telephone calls to him in which she prevailed upon him to make the sale and that he is unable to recall with sufficient accuracy all of the inducements which were made. We deem defendant's testimony in this regard completely credible and find that his inability to recall the inducements which were made to him prejudices the defense of his case.

Defendant's second claim of prejudice is that the prosecutorial delay has made Ayn Stern unavailable as a witness. Defendant testified at the evidentiary hearing that after he was indicted he asked Miss Stern to testify as a defense witness and she agreed to do so. Subsequently, however, she, herself, was indicted and later placed in a mental health clinic. She has been in and out of the clinic several times since her original commitment. Miss Stern retained counsel who has stated that he will advise her not to testify in defendant's case.[1]

1. This assumes, of course, that her testimony would be competent.

At prior argument on this issue, the government challenged defendant's claim of prejudice, alleging that Ayn Stern's unavailability as a witness was not caused by the delay. The contention is that, as Miss Stern was arrested not long after defendant was, if he had been arrested earlier she would have been also. Therefore she would, in any event, have been unavailable as a witness. We reject this contention. Defendant and Ayn Stern were not arrested together. There is no evidence that she was arrested on charges connected with the May 4 sale. Therefore, we find no necessary correlation between defendant's arrest and the arrest of Ayn Stern, and cannot with any degree of certainty conclude that had defendant been arrested earlier the government would similarly have arrested her. On the contrary, it is quite possible that had defendant been timely prosecuted, his case would have come to trial before Ayn Stern was arrested and indicted and placed in a mental health clinic. See *Woody, supra*, 370 F.2d p. 220.

The government also alleges that defendant has not shown with sufficient specificity how he will be prejudiced by Ayn Stern's absence as a witness. We disagree. Defendant has shown that his defense at trial would be one of entrapment. Ayn Stern, whom he alleges entrapped him, is unavailable as a witness. No other person was a party to the conversations between her and defendant. Consequently, defendant is now limited to his own testimony as the only source of evidence of entrapment. That Ayn Stern could, as a defense witness or on cross-examination, have corroborated his testimony is a distinct possibility. The foreclosure of this possibility of her testifying presents "potential substantial prejudice" to defendant's ability to defend himself. See Dickey v. Florida, 398 U.S. 30, 54, 90 S.Ct. 1564, 26 L.Ed. 2d 26 (1970), (Brennan, J., concurring). The Courts have consistently recognized that evidence of "actual" prejudice is often a matter extremely difficult of proof. *Ross, supra*. Here defendant does not, and obviously cannot, state with absolute certainty that Ayn Stern would corroborate his testimony. However, he has shown that she is the only person who *could* corroborate his version of the offense committed and that she is unavailable as a witness. We are satisfied from such showing that the absence of this witness increases substantially the likelihood that defendant will be erroneously convicted.

Finally, we address ourselves to the government's contention that the potential prejudice in this case does not approach that in *Ross* because the government's evidence here is much more reliable. In *Ross* the government's case consisted of the testimony of one undercover policeman who did not have independent recollection of the alleged incident and refreshed his recollection through a notebook, whereas in this case the evidence consists of the testimony of three narcotics agents testifying from personal recollection. It is, of course, generally true that the more reliable the government's case is, the less likelihood there is that a defendant will be erroneously convicted. Consequently, if only defendant's identification were at issue, the government's position might have merit, for it seems unlikely that all three agents would mistakenly identify defendant. However the defense here is entrapment,[2] and the identification of

2. There is no allegation that the three narcotics agents unlawfully induced defendant to sell methamphetamine. Rather he alleges that the only unlawful inducements were made by Ayn Stern. The government does *not* take the position that unlawful inducements by her would not constitute entrapment. In Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) the Court, in reversing a conviction for the illegal sale of narcotics, held that the government was responsible for unlawful inducements made to the defendant by an unpaid government informant. This case differs from *Sherman* only in that here the alleged inducements were made by an *unwitting* informant or agent. However the principle that "The Government cannot make such use of an in-

defendant, however accurate, would not conclusively establish guilt. While the government can quite reliably prove the sale of methamphetamine by defendant, there still exists a strong possibility that he will be convicted though innocent because of prejudice to his ability to establish his defense of entrapment.

As we conclude that the delay in prosecuting defendant constituted a denial of due process, his motion to dismiss his indictment will be granted. It is unnecessary for us to consider his contention that the delay which has occurred since his original indictment constitutes a denial of his Sixth Amendment right to a speedy trial.

See, also, D.C., 327 F.Supp. 101.

former and then claim disassociation through ignorance," would appear to apply equally to the facts of this case.

*Sherman, supra,* at p. 375, 78 S.Ct. at p. 822.