540 P.2d 1326

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**James Otis FIECHTER, Defendant-Appellant.**

**No. 1655.**

Court of Appeals of New Mexico.

June 4, 1975.

Certiorari Granted July 2, 1975.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Donald Klein, Jr., Associate Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., David Metz McArthur, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

LOPEZ, Judge.

The defendant was convicted of unlawfully possessing over eight ounces of marijuana contrary to § 54–11–23, N.M.S.A. 1953 (Repl. Vol. 8, pt. 2, Supp. 1973). We reverse and dismiss.

It is uncontested that the defendant had been enrolled in a methadone maintenance program in Taos, New Mexico. The program was closed and defendant was brought off the methadone rapidly. He moved from Taos to Albuquerque, where he found that a two week waiting require-

ment was established for entry into an Albuquerque methadone program. The alleged incident of possession took place during this time.

The evidence adduced at trial shows that when the defendant moved to Albuquerque, he was very sick due to withdrawal from the methadone. He contacted his former heroin supplier, Floyd Mora, who had since been arrested for narcotics violations. This man supplied defendant with small amounts of heroin to alleviate his withdrawal symptoms. Mora, after several refusals, persuaded the defendant to conclude a sale of marijuana in order to obtain enough money to purchase the heroin that would alleviate defendant's symptoms.

The defendant contends that the record shows entrapment as a matter of law. We agree.

The test for entrapment has been generalized in *State v. Sainz*, 84 N.M. 259, 501 P.2d 1247 (Ct.App. 1972), as follows:

" . . . When the state's participation in the criminal enterprise reaches the point where it can be said that except for the conduct of the state a crime would probably not have been committed or because the conduct is such that it is likely to induce those to commit a crime who would normally avoid crime, or, if the conduct is such that if allowed to continue would shake the public's confidence in the fair and honorable administration of justice, this then becomes entrapment as a matter of law." [Citations omitted]

In an amazingly similar factual setting, *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), indicates:

" . . . Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. [citing *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249 (1932)] To determine whether entrapment has been established, a line must be drawn between the trap for the unawary innocent and the trap for the unwary criminal. . . . " 356 U.S. at 372, 78 S.Ct. at 821.

For entrapment to attach, as a matter of law, the inducement to commit the crime alleged must come from a government agent or someone working under government direction. Entrapment by someone with no connection with the state is not a defense. This is because the focus for entrapment is on the conduct of the government. The purpose of acknowledging this defense at all is our concern with the legitimacy of police conduct. See *State v. Sainz*, supra.

We must then ask: was Mora a person working under government direction? The record shows that Floyd Mora had been arrested and charged with possession of narcotics the summer before the defendant's arrest; that the police obtained a confession from Mora; that, in exchange for the dropping of charges, Mora agreed to work as an informer for the police; and that the charges against Mora were not dropped until four months after the defendant's arrest.

Informers acting under promises of immunity have been treated by the courts as government agents for purposes of the entrapment defense. See cases cited in: Richard C. Donnelly, Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs, 60 Yale L.J. 1091, 1109 (1951); Reid Carron, Entrapment: A Critical Discussion, 37 Mo.L.Rev. 633, 641–42 (1972).

It is clear from the evidence that Mora was an informer acting under the promise of immunity. It was just such an informer whom the Supreme Court in *Sherman*, supra, regarded as an agent for purposes of entrapment. Mora was at least a "person working under government direction."

Was the informer's activity entrapment, as a matter of law? The record shows that from the moment Mora was contacted

by the defendant upon his return to Albuquerque, Mora pestered him about selling a quantity of marijuana. The defendant rejected these overtures several times before succumbing.

The effects of methadone withdrawal on the defendant's physical and psychological state were severe, making him especially susceptible to Mora's urgings. These effects were evidently known to Mora. It is uncontested on the record that the defendant initiated requests for heroin. It is also undisputed that the informer stood to gain a great deal from inducing the defendant to possess marijuana, the crime of which defendant stands convicted.

The court noted in *State v. Sainz*, supra:

"'. . . as the part played by the state increases, the importance of the defendant's predisposition and intent decreases, until at some point entrapment as a matter of law is reached. . . .'" 84 N.M. at 259, 501 P.2d at 1249.

We believe that this point has been reached when a state witness discloses that an informer proceeds to induce the commission of crimes of possession and then is excused from criminal prosecution.

We hold that, on the narrow issue of the facts presented in this case, the state's participation amounts to entrapment, as a matter of law.

But for the conduct of the state, a crime would not have been committed. This conduct is such, moreover, that to allow it to continue would shake the public's confidence in the fair and honorable administration of justice. *State v. Sainz*, supra.

In concluding, we note that this defendant is not the sort of person who ought to be sent to jail for the possession of controlled substances. The record shows that he did everything the state ordinarily recommends in order to break his heroin habit. He resisted strenuous urgings by an informer to sell marijuana, while supporting his habit by pawning his own goods during a painful delay before entry into an Albuquerque methadone program. The law does not require heroic standards of conduct. It would be ignoble "doublespeak" for this state to encourage withdrawal and treatment, with one hand, and alternatively punish crimes of possession with the other, when the very means of withdrawal have been eliminated through no fault of the addict, and the means of committing the crime supplied by a police informer.

Reversed and dismissed.

It is so ordered.

SUTIN, J., concurs.

HENDLEY, J., dissenting.

HENDLEY, Judge (dissenting).

I dissent.

What the majority has done today is to go far beyond what I consider to be the rule of "entrapment as a matter of law." See *State v. Sainz*, 84 N.M. 259, 501 P.2d 1247 (Ct.App. 1972).

I do not question the fact that Mora was acting as a governmental agent. Defendant had called Mora, his previous supplier, when he returned to Albuquerque. Defendant was desperate for money to buy heroin. He had pawned all of his own goods to get money. Defendant testified that he and Mora would ". . . pool our thoughts more or less, on where to get money [to buy heroin], and the TV was gone and the radio was gone, and what have you, and there was nothing else, you know." Defendant also stated that Mora raised the subject of marijuana "over three or five [times], maybe more." From this testimony alone it would appear that defendant was going to find some way to get money to buy heroin with or without Mora. Further, defendant was no novice in dealing in marijuana. He testified on direct examination that he had previously been convicted of smuggling marijuana.

I fail to see, under the current state of the record, how such events can be called a "trap for the unwary innocent." *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Nor do I see "the [government's] conduct [as] such that if allowed to continue would shake the public's confidence in the fair and honorable administration of justice." *State v. Sainz,* supra.

What the majority has concluded today is that whenever a defendant is between methadone treatments *any* activity by the government [Mora], regardless of the defendant's own thoughts, wants or desires, becomes "entrapment as a matter of law." Such a conclusion fails to recognize the true legal meaning of "creative activity."

I dissent.