**Tiburcio SOTO, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 464–83.

Court of Criminal Appeals of Texas, En Banc.

Dec. 19, 1984.

Stephen M. Orr, Austin, for appellant.

Ronald Earle, Dist. Atty. and Philip A. Nelson, Jr. and Ralph Graham, Asst. Dist. Attys., Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ODOM, Judge.

Appellant was convicted of delivery of heroin. On appeal the Court of Appeals found that appellant raised the issue of entrapment, V.T.C.A., Penal Code Sec. 8.06, and that the state failed to disprove the defense. *Soto v. State*, 649 S.W.2d 801 (Tex.App.—Austin 1983). We granted the petition for review to consider the correctness of that ruling.

We summarize the evidence as recited in the opinion of the Court of Appeals:

"On October 17, 1978, the appellant and Rosalinda Cervantes, an informant for the Austin Police Department, were together at her grandmother's house. Rosalinda used the phone, after which she asked the appellant if he wanted 'to score' for her. The appellant replied, '[n]o. You can score for me.' Rosalinda then said, '[c]ome on, he is a good friend of mine. I just called him and asked him to come over.' Appellant replied, 'yeah, yeah.' In fifteen minutes an undercover officer of the Austin Police Department drove up. Appellant testified that he still did not want to go but that Rosalinda urged him to do so. Appellant then left with the officer. He told the officer to wait for him some place and that he would go and 'get it for him.' Appellant testified, '[s]o, I went and got the dope for him and came back and gave it to him.' He admitted telling the officer to pick the two largest of the four packets which he had brought back to the officer. He testified that he delivered the 'dope' because of his sexual relationship with Rosalinda and because she asked him to do so. He testified that she talked him 'into it.' He admitted that the officer gave him the money and asked 'if I could score for him.' He told the officer that he could do so, left, got the 'dope' and delivered it to the officer.

"The transaction between the appellant and the officer occurred as a result of a contact between the informant, Rosalinda Cervantes, and the officer. The officer testified that the informant called him to ask if he wanted to 'score some more heroin.' She gave the officer directions as to where and when to meet the appellant. The officer testified that he did meet the appellant and that the two drove in a vehicle, under directions given by appellant, to a laundromat on Holly Street. The appellant told the officer, 'well, let me have the money and I will go get it for you, but you will have to wait for me here.' The officer testified that he gave the appellant fifty dol-

lars for one gram of heroin whereupon appellant told the officer, 'no, you are going to have to buy two grams so I can have some of it, or else I'm not going to do it.' The officer gave the appellant an additional fifty dollars; the appellant left and returned in a short time with four squares of aluminum. He asked the officer to pick the two largest squares. The officer did so and appellant retained the other two squares. The squares delivered to the officer, by chemical analysis, were determined to contain heroin."

Although appellant's testimony indicates he did so as a result of inducement by police informant Cervantes, the testimony of the officer raised a fact issue as to the reason appellant committed the offense. Although the officer's testimony did not contradict the testimony given by appellant as to the conversation had with Cervantes and his relationship with her, it did contradict appellant's assertion that he committed the offense as a result of that conversation and relationship. Specifically, the officer testified that before appellant agreed to perform the transaction he said "you are going to have to buy two grams so I can have some of it, or else I'm not going to do it." This evidence shows a different motive: appellant committed the offense in order to obtain heroin for himself and he initiated the condition for delivery. The trial court as trier of fact was authorized to weigh the evidence and draw a conclusion from the circumstances that appellant was not induced by Cervantes to commit the offense.

Another reason that entrapment is not established is the failure of the evidence to show that Cervantes was a law enforcement agent under Sec. 8.06, supra. In *Rangel v. State*, 585 S.W.2d 695, the Court said:

"Sec. 8.06(b) clearly requires some type of communication between the law enforcement official and his agent or informant, than action by the informant on this communication. The nature of this communication and the extent to which the informant must be instructed or controlled by the law enforcement official has yet to be determined by this Court. However, the mere classification or labeling of a citizen as a 'police informant' is clearly insufficient when one considers the language of Sec. 8.06(b) and the practice commentary following. That commentary provides:

" 'The promotion of crime by anyone for the purpose of enforcing the law is questionable, and it certainly should not be permitted by agents *over whom the police have control*. Thus, the police should at the very least, apprise their agents of methods not to be used.'

"The quest in such cases is to determine the degree of police involvement and to judge whether that involvement provided only the opportunity for the criminal mind to commit the offense. *Lopez v. State*, 574 S.W.2d 563 (Tex.Cr. App.1978). Such an examination must cover two areas.

"The first area of inquiry should be the specific case at bar. A search must be made to determine if the officer specifically instructed his agent or informant to use an improper procedure to 'make a case' against a particular defendant. If such specific instructions are discovered, the entrapment defense is available....

"The control or instruction from a police officer to his informant which would constitute entrapment may also be of a general nature. Such general control might arise when an informant has been used repeatedly. After the informant becomes 'experienced,' he realizes how to 'set up' people to make cases. In such a situation, there is no specific instruction but the police official is still exercising control by failing to properly instruct his agents. Factors for consideration in such cases include number of cases this informant has been involved in and their disposition, if available; the amount and method of compensating the informant; the working relationship between the police officer and the informant; and his contacts with police officers."

The record in this case is scant in this regard. The opinion of the Court of Appeals reveals these facts from this case:

"The officer admitted that he had no direct knowledge as to who initiated the transaction or who initiated the conversation about the exchange of heroin. That is, he did not know whether Rosalinda asked the appellant to sell or whether appellant asked her if she wanted to sell.

" . . .

" . . . The undercover officer admitted that Rosalinda and the appellant had once travelled to Arizona. He further testified that the Austin Police Department paid the expenses of Rosalinda and the appellant coming back to Austin after they went off to Arizona together. The officer admitted that he was introduced to Rosalinda Cervantes by other officers of the Austin Police Department; that he was told that Rosalinda and he were to work together on heroin cases in East Austin; and that he was to be sent 'specifically to East Austin with Rosalinda to work on making buys of controlled substances, specifically heroin.' . . ."

■ The record reflects the summary above. The first part quoted demonstrates a lack of specific instruction such as would render Cervantes a law enforcement agent under the first test of *Rangel*. The second part quoted, although revealing the *objective* of the relationship between Cervantes and the police does not reveal what degree of general control may have existed. We find the evidence does not show Cervantes was a law enforcement agent as defined in Sec. 8.06(b), supra, such as to support a finding of entrapment.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for such further proceedings as are appropriate.[1]

CLINTON, Judge, dissenting.

The majority would have it that "*[a]nother reason* that entrapment is not

established as a matter of law is the failure of the evidence to show that Cervantes was a law enforcement agent under Sec. 8.06 . . ."[1] That reason has not been made an issue in this cause, so the Court ought not to reach out for it to reverse the judgment of the Austin Court of Appeals.

Jurisdiction of this Court in a cause such as the one at bar is "to review a *decision* of a Court of Appeals in a criminal case as provided by law," Article V, § 5, Constitution of the State of Texas. The Legislature has provided by law that this Court may "review any *decision* of a court of appeals in a criminal case," Article 4.04, § 2, V.A.C.C.P.; Articles 44.01 and 44.45, *id.;* see also Tex.Cr.App. Rule 302 and Rule 304(a). Within the authority granted by Article 44.45(c), supra, we have promulgated appellate rules which direct the party who petitions for discretionary review, *inter alia,* to identify grounds or questions for review and reasons therefor, with the assurance that "opinions of the court of appeals will be considered with the petition," Tex.Cr.App. Rule 304(d)(4) and (5); furthermore, when we grant a petition the practice is for our Clerk to notify the parties of the ground or grounds to be reviewed so that they may prepare and file a brief on the merits pursuant to Tex.Cr.App. Rule 306. Thus the issues the Court will exercise its jurisdiction to consider are specified for the understanding of all concerned, and no participant is likely to be "ambushed."

In this cause the only ground of error presented to the court of appeals is: "The trial court erred in failing to find that the appellant was entrapped into delivering heroin and was entitled to a finding of not guilty as a matter of law." The sole "counterpoint" by the State is a negative assertion of the ground of error. The court of appeals rendered a decision on March 9, 1983, reversing the judgment of conviction and remanding the cause with instruction to dismiss with prejudice. The

---

1. We express no opinion on the other grounds of error asserted in the appeal.

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

State timely filed a motion for rehearing in which the thrust of its contention is that it had offered evidence rebutting the defense of entrapment sufficient that the trial court found against appellant on the issue, relying on the opinion of this Court in *Cook v. State*, 646 S.W.2d 952 (Tex.Cr.App.1983) to the effect that it is not error to deny a motion for acquittal when there is conflicting evidence on the issue of entrapment before the factfinder, whose ultimate resolution of the conflict is not to be disturbed. Responding to that motion the court of appeals withdrew its original opinion and rendered the instant decision now before this Court for review. *Soto v. State*, 649 S.W.2d 801 (Tex.App.—Austin 1983).

The court of appeals was not called on to decide whether "Cervantes was a law enforcement agent under Sec. 8.06," and it did not gratuitously do so. Indeed, that she was is a matter accepted by all parties and the court,[2] and upon that basis the cause was presented and decided.

In his petition the district attorney directly focuses on the holding of the court of appeals that the State failed to rebut the entrapment defense, contending that the court "ignored evidence squarely rebutting such defense, thereby usurping the Trial Court's authority as the trier of the facts and sole judge of the credibility of the witnesses." More elaborately the State Prosecuting Attorney frames five questions for review, but none remotely addresses whether "Cervantes was a law enforcement agent under Sec. 8.06."[3] As reasons for review both assert that the decision of the court is in conflict with applicable decisions of this Court and of other courts of appeals, but neither ever cites *Rangel v. State*, 585 S.W.2d 695 (Tex. Cr.App.1979), nor claims that its test is

implicated in the case at bar. Likewise in his brief the district attorney pretermits any *"Rangel"* contention.[4]

Accordingly, whether there is evidence to show that "Cervantes was a law enforcement agent under Sec. 8.06" never has been made an issue in this cause. For the Court *sua sponte* to raise for the first time an issue of sufficiency of evidence to support an element of a defense to prosecution smacks of a denial of due process. As with all statutory defenses the issue of entrapment is raised when evidence is admitted supporting the defense, and it then becomes the burden of the prosecution to disprove the defense beyond a reasonable doubt. V.T.C.A. Penal Code, § 2.03(c) and (d); *Rodriquez v. State*, 662 S.W.2d 352, 354, n. 3 (Tex.Cr.App.1984); *Bush v. State*, 611 S.W.2d 428, 430 (Tex.Cr.App.1980) (for the continuing vitality of which see *Rodriquez v. State*, supra, at 355, n. 6). Here clearly the parties accepted that Cervantes was acting in the role of a law enforcement agent and litigated only the issue of "inducement." In these circumstances and at this stage of the cause it is fundamentally unfair to fault appellant with a finding of failure of proof on a point that was never contested in the trial court.

Therefore, I dissent to a *sua sponte* determination by this Court of a matter that was neither raised in the trial court, presented to or decided by the court of appeals, nor included in a petition for discretionary review.

Furthermore, the underpinnings of *Rangel* have been weakened if not removed by *Rodriquez*, supra; the crux of *Rangel* is found in the following statement:

"The quest is to determine in such case the degree of police involvement and to

---

**2.** Appellant had characterized Cervantes as an "undercover informant" (Brief for Appellant, p. 2); referring to testimony of Officer Trevino, the district attorney called her "his informer" (Brief for the Appellee, p. 2); the court of appeals described her as "an informant for the Austin Police Department," *Soto v. State*, supra, at 802. All are correct, as we shall see.

**3.** Even the State Prosecuting Attorney, who entered this cause after the final ruling of the court of appeals, refers to Cervantes as "a woman who was working as a police informer." Petition for Discretionary Review, p. 5.

**4.** The State Prosecuting Attorney did not favor us with a brief, and neither side made oral argument when the cause was submitted to the Court.

judge whether that involvement provided only the opportunity for the criminal mind to commit the offense. *Lopez v. State,* 574 S.W.2d 563 (Tex.Cr.App. 1978)."

*Rangel,* at 699.[5] However, Rodriguez held that by enacting § 8.06 the Legislature adopted the "objective entrapment test" capsuled in *Norman v. State,* 588 S.W.2d 340 (Tex.Cr.App.1979), *viz:*

"The objective entrapment test mandates that the trier of fact, having once determined that there was an inducement, need now consider *only* the nature of the State agent activity involved, *without reference to the predisposition of the particular defendant." Id.,* at 346.

Concomitantly, we concluded in *Rodriquez:* "Thus, without reference to 'predisposition' of appellant to commit the theft offenses, the issue is whether appellant was induced to engage in the penal conduct alleged through persuasion or other means likely to cause persons to commit the offenses or was merely afforded an opportunity to commit them." *Id.,* at 355.

When the defense is that a "police informant" induced an accused to engage in the conduct charged by using persuasion or other means likely to cause persons to commit the offense, the first quest should be to determine whether that person is acting in accordance with instructions from a law enforcement agent in the sense that the agent is directing the "police informant,"

without regard to "predisposition" of the accused.[6]

In the case at bar the majority says the evidence is insufficient to show that Cervantes was a law enforcement agent within the meaning of § 8.06(b) in that a specific instruction is lacking and the evidence shows only "the *objective* of the relationship between Cervantes and the police." [7] But there is more to what went on here than is indicated in the majority opinion, and to an exposition of those facts I now turn.

Officer Trevino identified himself as a "narcotics officer" for the City of Austin, having then been in the "narcotics detail" for approximately a year and a half. He confirmed his presence and participation in an "initial meeting" with Cervantes somewhere in the Austin police station in late September 1978, held under the aegis of Sergeant Huckabee and Officer Stafford. Trevino was introduced to her, and was told by his superior officers that he and Cervantes were to work together on making buys of heroin (and, if offered, other controlled substances as well) in east Austin and anywhere else in Austin. He said the plan was "to go out on the street and simply see what turned up," and to that end Trevino adopted a street name and drove around in a variety of motor vehicles.[8]

Meanwhile, appellant was released from prison September 22; he found casual employment, and soon established a sexual relationship with Cervantes. Cervantes is

5. As member of the panel deciding it, the writer accepted the *Rangel* test because it emphasized "the degree of police involvement," and the precedential worth of *Langford v. State,* 571 S.W.2d 326 (Tex.Cr.App.1978) was not high at the time. See *Langford v. State,* 578 S.W.2d 737 (Tex.Cr.App.1979). However, I did urge that a factfinder should understand that "the informant could have entrapped the defendant in a variety of agency theories and not only under specific instructions from an agent to entrap," *Rangel,* at 701.

6. The Practice Commentary following § 8.06 states that subsection (b) "proscribes entrapping methods by persons *directed* by a peace officer as well as by the peace officer himself." As Judge W.C. Davis noted in *Rangel,* the commen-

tary also alludes to "agents over whom the police have control," but it would be a mistake to find no "control" when a police informant is being "directed" by a law enforcement agent.

7. Emphasis is added in majority opinion.

8. It is obvious from his own testimony that Trevino did not recruit Cervantes, and apparently neither Sergeant Huckabee nor Officer Stafford briefed him fully about her. For instance, unknown to him was the fact that Cervantes would also work with another undercover Austin law enforcement agent named Ciro de la Vega. Thus, Trevino was not her "control agent" to the exclusion of others, and the majority errs in proceeding on that premise.

the daughter of Rosa Lopez; she also had a grandmother who resided in east Austin, and with whom she apparently stayed from time to time. Cervantes told appellant that Trevino was a good friend of hers, that she had known him for years.

On the afternoon of October 8, 1978 Trevino drove alone to a grocery store on Holly Street, where by prearrangement he parked near an automobile belonging to Cervantes and occupied by her, Lopez and appellant.[9] According to his corrected version Cervantes came to him and said that appellant "would score, would purchase some heroin for us," that Trevino was to give her the money (fifty dollars for a gram of heroin) and she in turn would hand it over to appellant; then within five minutes they were to meet at " 'Johnny Boys' on East 7th Street to finalize the transaction." He handed her the money and watched as she walked directly to appellant and gave it to him. Trevino agreed that "the clear import of the transaction [was] that the money had to be given to [appellant] so he could go buy it for her." Cervantes rode with Trevino to a parking lot

on East 7th, and shortly Lopez drove up in her daughter's car with appellant. Lopez got out, walked around to the driver's side of the truck and handed Trevino a balloon containing one gram of heroin.[10]

When Trevino agreed to what was "the clear import of the transaction," see *ante*, he volunteered the following explanation:

"[On] four or five occasions, Rosa Lopez would approach me and would *directly* try to sell me heroin, and believe it or not, I turned her down four or five times because of the relationship between the informant and, you know, the mother. I did not want to do her—I didn't—but she just walked right in—and on the sixth time I just couldn't turn her down."[11]

The October 9, 1978 transaction forms a backdrop to provide a clearer perception of the October 17, 1978 offense that is the subject of the instant cause. Among other things we now come to understand what Cervantes meant when she called Trevino at his office on the latter day and opened the conversation by asking if he "wanted to score some *more* heroin."[12] His cryptic

9. Referring to Cervantes and Lopez, appellant testified that "they said they was going to score some, so they went down to where he [Trevino] said, to the grocery store, parked there and she [Cervantes] called somebody." After about an hour "or something like that" Trevino arrived in a white truck. Initially Trevino testified that Cervantes was riding with him and that appellant and Lopez drove up and parked next to them. However, after appellant testified otherwise Trevino was recalled and he recanted that his first version, saying appellant was "right"— "I did drive up to the store by myself [in a truck, or car, or something], and Linda [Cervantes], Momma [Lopez] and Butch [appellant] were already there." Though the stated purpose of recalling Trevino was for him "to just tell us" about what he "remembered a little bit differently" from his earlier testimony, and Trevino did say he made a "mistake" on two points about which appellant was "right," he did not dispute the plain inference that Cervantes had called him to come to the grocery store to make a buy—from her own mother, as it turned out.

10. Appellant recounted that Cervantes returned from Trevino, held out and opened her hand with some money in it and told him, "Give it to my momma." Lopez was then in or about the grocery store; when she came out to the car appellant turned the money over to her, saying, "Here is some money Rosalinda says give to

you." Lopez then left the car and went away for about five minutes; when she came back she said that they were "going to go to 'Johnny Boys' " and proceeded to drive to the parking lot where the white truck was. Lopez got out, went to the truck, came back and drove off in her daughter's car. During all of that appellant had remained in Cervantes' car.

11. Trevino "felt that would be a little strong, to make a case on [an] informant's mother" and "tried not to ... five times." However, as a consequence of the October 9, 1978 transaction both appellant and Lopez were later indicted together for delivery of heroin.

12. The court of appeals found that Trevino admitted he had no direct knowledge about who initiated the conversation about an exchange of heroin—that is, whether Cervantes asked appellant to sell or "whether appellant asked her if she wanted to *sell* [sic]." Actually in the transcription of the notes of the court reporter that part of the question is "whether he asked her if she wanted to *buy*?" In my view the purpose of the inquiry was simply to establish lack of such knowledge on the part of Trevino in order to ensure that he could not create a conflict with the testimony appellant was about to give to the effect that Cervantes not only initiated the con-

reply was: "Yeah, fine," and we also know why that was enough for Cervantes to tell him to "come pick up Butch" at a given intersection near where, according to appellant, her grandmother's house was situated and from which Cervantes made the telephone call and appellant departed to go wait for Trevino to arrive.

That Trevino did not know who initiated the October 17 transaction is of little moment in deciding whether Cervantes was acting as a law enforcement agent within the meaning of § 8.06(b). Nor did Trevino know of another occasion when appellant delivered heroin to another undercover Austin law enforcement agent, Ciro de la Vega. As appellant summarized the incident, Cervantes instigated that one also.

> "She set it all up for me through a good friend of hers. She took me way out to Airport [Boulevard] and everything and introduced him to me. Then he said he wanted to score some dope. She had already called him already."

While the record does not inform us of the duration of what Trevino euphemistically called an "investigation," the end came when it was determined that "we had done enough or we couldn't do any more." After that Cervantes and appellant "ran off to Arizona." According to Trevino, at some point Cervantes called the narcotics office, revealed where they were and either

"*Officer Stafford or Sgt. Huckabee* paid their way back to Austin ... to stay in town."[13]

Accordingly, the records bears out what the parties, the trial judge, the court of appeals and the State Prosecuting Attorney accepted as a given: Cervantes was a "law enforcement agent" within the meaning of § 8.06(b). Circumstantially, she is indeed shown to have been acting under the general direction and control of law enforcement agents in the narcotics detail of the Austin Police Department. See *Rangel*, supra, at 699.

Because the majority addresses the matter in the first instance, I respectfully dissent; because it then finds the evidence is insufficient to support a finding that Cervantes was a law enforcement officer, I also dissent.

TEAGUE, J., joins.

MILLER, Judge, dissenting.

In a cleverly crafted essay the majority has successfully evaded the *sole* issue presented before this Court: whether the uncontroverted evidence concerning the conduct of the police informant raises the defense of entrapment.

The use of informants in law enforcement is not new and the defense of entrapment has been recognized by the judiciary for more than 100 years.[1] The defense of

---

versation with Trevino but also began to "nag" appellant to go with Trevino "to score for her." In any event, Trevino already knew from the scenario she played out at the grocery store the week before that Cervantes was perfectly willing to implicate appellant.

**13.** Just how Trevino stated that development indicates the mindset of some peace officers who work in a narcotics detail of a metropolitan police department, *viz:*

> "... *we* got a call from Linda [Cervantes] at the office telling *us* where she was at and who she was with. So we—well, *I am not going to say 'we'*—I believe it was Officer Stafford or Sgt. Huckabee paid their way back to Austin."

Functioning through hearsay is a way of life for such peace officers, and it becomes idiomatic to say "we" did this or that and something happened to "us." When Trevino corrected himself he revealed the ultimate truth: both he and Cervantes had been working under the direction

and control of superior officers in the narcotics detail.

**1.** It has been noted that:

> "From early times law enforcement authorities have utilized informers. Their value in ferreting out crime was recognized in the ancient practice of English medieval law called approvement. Being arraigned on a charge of treason or felony, the approver confessed his guilt, and in order to obtain a pardon, offered to appeal and convict other criminals called the appellees. If the appellees were found guilty the approver was pardoned. If the appellees were acquitted the approver was hanged. The approvement was open to obvious abuses and Sir Matthew Hale observed that 'this course of admitting of approvers hath been long disused, and the truth is, that more mischief hath come to good men by these kinds of approvements by false accusations of desperate villians, than benefit to the

entrapment, codified in V.T.C.A. Penal Code Section 8.06,[2] is available in situations where the informant, in an excessive and corrupt desire to obtain a conviction has persuaded a law abiding person to commit a crime. In *Casey v. United States*, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632 (1928), Justice Brandeis noted:

> "But it does not follow that the court must suffer a detective-made criminal to be punished.... This prosecution should be stopped, not because some right of Casey's has been denied, but in order to protect the Government. To protect it from illegal conduct of its officers. *To preserve the purity of its courts.*" *Id.* at 423, 48 S.Ct. at 375 (Brandeis, J., dissenting) (emphasis added).

It is *this* Court's duty in preserving the purity of the administration of criminal justice to carefully and judiciously scrutinize the informant's activities in the instant case for any indicia of overzealousness and overreaching tactics. As Justice Holmes noted,

> "It is desirable that criminals should be detected, and to that end all available evidence should be used. It also is desirable that the Government should not itself foster and pay for other crimes.... *We have to choose, and for my part I think it a less evil that some criminals should escape than that the Government should play an ignoble part.*" *Olmstead v. United States*, 277 U.S. 438, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928) (Holmes, J., dissenting) (emphasis added).

The majority's refusal to address the critical issue in this case is inconceivable; and its extension of "a maxim or a definition with relentless disregard of consequences to a 'dryly logical extreme' "[3] is intolerable. Whether one calls it Begriffsjurisprudenz, mechanical jurisprudence, or slot machine justice,[4] I reject the process the majority has adopted that "obviously a principle, if sound, ought to be applied wherever it logically leads, without reference to ulterior results."[5]

The fallacies in the majority opinion are many. It assumes that V.T.C.A. Penal

public by the discovery and convicting of real offenders, gaolers for their own profits often constraining prisoners to appeal honest men.'" Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs*, 60 Yale L.J. 1092 (1951).

Although the availability of entrapment as a defense was suggested as early as 1878 in *United States v. Whittier*, 28 Fed.Cas. 591, No. 16,688 (E.D.1878), it was not until 1915 in *Woo Wai v. United States*, 233 Fed. 412 (6th Cir.1916), that a federal court acquitted a defendant because he was entrapped. The Supreme Court considered the problem in 1895 in *Grimm v. United States*, 156 U.S. 604, 610, 15 S.Ct. 470, 472, 39 L.Ed. 550 (1895), with Justice Brandeis writing an adumbrative dissent in *Casey v. United States*, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632 in 1928. It was not until *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), that the Court gave the doctrine careful consideration and undertook to examine its rationale, determine its validity, and prescribe the applicable procedure.

**2.** V.T.C.A. Penal Code, Sec. 8.06 (1974), provides:

> "(a) It is a defense to prosecution that the actor was engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person

an opportunity to commit an offense does not constitute entrapment.

> (b) In this section 'law enforcement agent' includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents."

**3.** *Hynes v. New York Cent. R. Co.*, 231 N.Y. 229, 235, 131 N.E. 898, 900 (1921) (Cardozo, J.).

**4.** *U.S. v. Jannotti*, 673 F.2d 578, 615 (3d Cir. 1982) (Aldisert, J., dissenting).

**5.** *Gluck v. Baltimore*, 81 Md. 315, 32 A. 515, 517 (1895). In *U.S. v. Jannotti*, 673 F.2d 578, 616 (3d Cir.1982), Justice Aldisert in his dissent stated,

> "I believe that the proper test of a legal rule is the extent to which it contributes to the establishment and preservation of a social environment in which 'the quality of human life can be spirited, improving and unimpaired' [citations omitted] and that law must be judged by the results it achieves, not by the niceties of its inherent structure. 'It must be valued by the extent to which it meets its end, not by the beauty of its logical processes or the strictures with which its rules proceed from the dogmas it takes for its foundation. [citations omitted].'" *Id.* at 616.

Code, Sec. 8.06, the codification of the entrapment defense, requires a showing of a single and exclusive reason for committing the offense in order to "raise" the defense. It does not. In addition, the majority has misinterpreted the word "induce" within Sec. 8.06(a) to mean "constituting the sole reason for the outcome." In fact, induce simply means and has been judicially applied as *"influencing* the reason or judgment." Webster's Seventh New Collegiate Dictionary (3rd ed. 1969) (emphasis added).

One redeeming feature of the opinion is the tacit acknowledgement of its internal weakness; the form of that acknowledgement, however, constitutes still another problem with the opinion—by misinterpreting the issue presented as including whether the appellant's evidence establishes that Rosalinda Cervantes was a "law enforcement agent" under *Rangel v. State,* 585 S.W.2d 695 (Tex.Cr.App.1979), the opinion interjects what logicians call *the fallacy of the strawman.* At *no* time has the State in the trial court, in the Court of Appeals, or in this Court ever disputed or contested the issue that Cervantes was acting as a law enforcement agent. If this was an issue raised by the appellant, the majority would have (and has on numerous occasions) summarily dismissed this contention by citing the well-worn and well-established rule that there was "no objection at trial, thus nothing is presented for review," citing *Romo v. State,* 568 S.W.2d 298 (Tex.Cr.App.1978). For some unexplained reason the majority fails to apply that same rule of law to the State, in its appeal before this Court.

Even if Cervantes' status as a law enforcement agent is an issue before this Court, the majority has construed the appellant's "burden of production" in raising a true defense to be a "burden of persuasion beyond a reasonable doubt." This is

patently incorrect. The *State* has the burden to disprove the defense of entrapment beyond a reasonable doubt after the issue has been properly raised by the evidence. As this court stated in *Bush v. State,* 611 S.W.2d 428, 430 (Tex.Cr.App.1980), "The defendant has the burden of producing evidence to raise the defense, but the prosecution has the final burden of persuasion to disprove it." The proper allocation of burdens of proof in entrapment cases has been discussed by the Fifth Circuit in *U.S. v. Dean,* 666 F.2d 174, 180 (5th Cir.1982); *U.S. v. Webster,* 649 F.2d 346, 349 (5th Cir.1981); *U.S. v. Dickens,* 524 F.2d 441, 444 (5th Cir.1975), *cert. den.* 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976); as well as in other circuit courts, see *U.S. v. Parr,* 716 F.2d 796, 802 (11th Cir.1983); *U.S. v. Zajac,* 677 F.2d 61 (11th Cir.1982); *U.S. v. Humphrey,* 670 F.2d 153 (11th Cir. 1982), *cert. den.,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982); and *U.S. v. Jannotti,* 673 F.2d 578 (3rd Cir.1982), *cert. den.,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982).

Assuming, arguendo, that appellant had a burden to prove Cervantes was a "law enforcement agent" (by acting in accordance with instructions from such agents," V.T.C.A. Penal Code, Sec. 8.06(b)) beyond a reasonable doubt, the majority opinion adds the requirement that such proof be by direct evidence: To hold the testimony of Officer Trevino [6] is insufficient to prove beyond a reasonable doubt that the officer had "general control" over Cervantes in making heroin cases, is to ignore every principle of circumstantial evidence known to the law. Perhaps the majority would be satisfied if the appellant introduced into evidence a written employment contract entered into by the Austin Police Department and Cervantes to illustrate that Cervantes was, indeed, a "person acting in accordance

6. At the pre-trial hearing on the issue of entrapment, Officer Trevino testified that he was an undercover narcotics agent; that he was introduced to Cervantes by fellow officers; that he was told that he and Cervantes were to work together on heroin cases; that he was sent specifically to East Austin with Cervantes to work on making buys of controlled substances, specifically, heroin; that the Austin Police Department financed a return trip to Austin for Cervantes and appellant, and that on the day of the offense Cervantes called Officer Trevino and asked him if he wanted to "score some *more* heroin."

with instructions from a law enforcement official," namely, Trevino. See V.T.C.A. Penal Code, Sec. 8.06(b).

In addition, the majority misinterprets the test set forth in *Rangel,* supra, and states, in effect, that the Government's convenient ignorance of their informant's methodology absolves them of responsibility for the actions of their informants. Such reasoning is in *direct* conflict with the United States Supreme Court's holding in *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), an entrapment case, in which Chief Justice Warren, writing for the majority, stated:

> "The Government cannot disown Kalchinian [the informant] and insist it is not responsible for his actions .... In his testimony the federal agent in charge of the case admitted that he never bothered to question [the informant] about the way he made contact with petitioner. *The Government cannot make such use of an informer and then claim disassociation through ignorance.*" *Id.,* 356 U.S. at 375, 78 S.Ct. at 822, 2 L.Ed.2d at 852 (1958). (emphasis added).

The U.S. Supreme Court's strongly worded directive concerning the Government's responsibility for the actions of its informants, holding that ignorance is no defense, and that the government is deemed to have constructive knowledge of such actions, has been cited by the Fifth Circuit in *U.S. v. Fischel,* 686 F.2d 1082, 1085 (5th Cir.1982); *U.S. v. Anderton,* 629 F.2d 1044, 1047 (5th Cir.1980); *U.S. v. Waddell,* 507 F.2d 1226, 1228 (5th Cir.1975); *U.S. v. Gomez-Rojas,* 507 F.2d 1213, 1218 (5th Cir. 1975); *U.S. v. Mosley,* 496 F.2d 1012, 1016 n. 4 (5th Cir.1974), and by the Fourth Circuit in *U.S. v. Perl,* 584 F.2d 1316, 1322 n. 5 (4th Cir.1978). See also, *U.S. v. Kleinbard,* 333 F.Supp. 699, 702 n. 2 (E.D.Pa.1971). Numerous state courts have held that,

> "However desirable and helpful the employment of an informant may be in the pursuit and discovery of criminal activity and evidence of crime, law enforcement authorities may not disavow him and disclaim responsibility for his actions when

he entraps someone because they had no knowledge and did not approve of the entrapment. In short, 'Government cannot make such use of an informer and then claim dissasociation through ignorance.'" *State v. Talbot III,* 135 N.J.Super. 500, 343 A.2d 777, 782 (N.J.Super.Ct. 1975), citing *Sherman,* supra.

See also, *State v. Perez,* 438 So.2d 436, 439 (Fla.Dist.Ct.App.1983); *State v. Devine,* 554 S.W.2d 442, 447 (Mo.Ct.App.1977); *Messelt v. State,* 351 So.2d 630 (Ala.Crim. App.1977); *State v. Cooper,* 248 N.W.2d 908, 910 (Iowa 1976); *State v. Tomlinson,* 243 N.W.2d 551 (Iowa 1976); *State v. Ostrand,* 219 N.W.2d 509, 512 (Iowa 1974); *Lynn v. State,* 505 P.2d 1337, 1343 (Okla. Crim.App.1973); *People v. Dollen,* 53 Ill.2d 280, 290 N.E.2d 879, 881 (1972); and 21 Am.Jur.2d *Criminal Law* Sec. 202 at 384 (1981).

Even if the majority were correct in their assumption of innocence concerning Cervantes, that she was waging her own private "war on drugs" campaign in East Austin, the circuit courts have consistently held that entrapment can occur as a result of efforts of informers who *are* merely private citizens. See generally, *U.S. v. Perl,* 584 F.2d 1316 (4th Cir.1978) (The court noted that *Sherman,* supra, allows an entrapment defense even where the government has neither prior knowledge of nor direct involvement in the scheme to entrap. The court noted that there must be a showing that the government and the entrapper have a relationship such that the government is estopped from denying responsibility for the entrapment. The court held that in the *Perl* case the appellant failed to produce a "shred of evidence" linking the informant to the U.S. government), and *Notaro v. U.S.,* 363 F.2d 169, 172 n. 2 (9th Cir.1966) (Informant, who met a U.S. Treasury agent employed by the Federal Bureau of Narcotics, volunteered his services and requested no compensation and became reacquainted with the appellant, an old friend, in an effort to purchase marihuana from the appellant. The court

held that the informant, "though not paid for his activity was an agent with the Government's law enforcement officer." *Id.* at 172). See also, *U.S. v. Graves,* 556 F.2d 1319, 1326 (5th Cir.1977); *U.S. v. Groessel,* 440 F.2d 602, 605 n. 1 (5th Cir. 1971), *cert. den.* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); *Henderson v. U.S.,* 237 F.2d 169, 174 (5th Cir.1956); *Johnson v. U.S.,* 317 F.2d 127, 128 (D.C. Cir.1963); 1 National Commission on Reform of Federal Criminal Laws, Working Papers, p. 321 (1970); and Model Penal Code, Tentative Draft 9, Sec. 2.10(6) p. 22 (1959).

The majority has chosen to ignore the evidence produced at the pre-trial hearing of the government's inducement. The record reflects that at the hearing appellant testified that after his release from prison in September, 1978, he established a sexual relationship with the informant. He testified that it was because of this sexual relationship with the informant that he sold heroin to the informant's "friend," Officer

Trevino, on October 17, 1978. Appellant further testified that he would not have delivered heroin to anyone without having been requested to do so by Rosalinda Cervantes—that she asked him to do it and that was why he did it. Officer Trevino testified that he had no direct knowledge as to who initiated the transaction or who intiated the conversation about the exchange of heroin. The majority has cleverly avoided discussing the facts in this case concerning the sexual relationship between Cervantes and appellant and whether the testimony concerning the sexual relationship between the two raises the defense of entrapment.[7]

In addition, the majority blindly (and perhaps purposefully) ignores the law governing the State's burden of proof in this case and the fact, as the Court of Appeals aptly points out in its opinion, that the State could have called the informant to the stand to dispute and disprove the appellant's claims. The State's failure to produce Rosalinda Cervantes in rebuttal

7. "Depending upon the facts of each case, examples of prohibited governmental activity may include extreme pleas of desperate illness, appeals based primarily on sympathy, pity or *close personal friendships* and offers of inordinate sums of money." (emphasis added) 21 Am. Jur.2d *Criminal Law* Sec. 206 at p. 378 (1981). Many appellate courts across the nation have been faced with the issue presented before us concerning the defense of entrapment and inducements based on close personal or familial friendships. In *People v. Ramon,* 86 Mich.App. 113, 272 N.W.2d 124 (1978), the appellate court determined, contrary to the ruling of the trial court, that the defendant was entrapped after the cousin of the defendant, working with law enforcement agents, persuaded the defendant to sell him (the cousin) heroin after the cousin-informant assured the defendant that the informant needed the money to engage an attorney for previous charges of burglary and after assuring the defendant that he would not use the drug himself. In *Pascu v. State,* 577 P.2d 1064 (Alaska 1978), the court found that there was evidence which revealed that the police agent played heavily on his close personal friendship with the defendant when he asked the defendant to buy heroin for him; made repeated appeals to the defendant's sense of obligation and sympathy telling the defendant he was sick and needed a "fix." In *People v. McIntire,* 23 Cal.3d 742, 153 Cal.Rptr. 237, 591 P.2d 527 (1979), the

court found substantial evidence of entrapment to show that the defendant did not want to participate in the transaction but acquiesced after constant urging by her younger brother because of family problems; that the importuning from her brother was the direct result of strong and persistent pressure brought to bear by an undercover police agent. In *State v. Kamrud,* 611 P.2d 188 (Mont.1980), the court found that the undercover officer who induced the defendant to give them a minute quantity of marijuana did more than merely afford the appellant with the opportunity to commit the offense by making a casual offer to buy. The court found that the agents had befriended him and approached him on more than one occasion for the purpose of soliciting drugs. In *People v. Gratzer,* 104 Mich.App. 705, 305 N.W.2d 300 (1981), the court of appeals held that the defendants were entitled to dismissal of the charges of delivery and possession of controlled substances on the ground of police entrapment where the police exploited the friendship between the defendants and the police informant. See also, *People v. Spahr,* 56 Ill.App.3d 434, 14 Ill.Dec. 208, 371 N.E.2d 1261 (1978); *People v. Walker,* 61 Ill.App.3d 4, 18 Ill.Dec. 315, 377 N.E.2d 604 (1978); *State v. Fiechter,* 88 N.M. 437, 540 P.2d 1326 (1975); *People v. Duis,* 81 Mich.App. 698, 265 N.W.2d 794 (1978); and *People v. Wisneski,* 96 Mich.App. 299, 292 N.W.2d 196 (Mich.Ct.App. 1980).

**614**

should require an inference to be drawn against the State on the question of inducement. In addition, the State has failed to present any evidence concerning an inability to locate the informant to testify.

"Many sins in the law have at times been swept under a jurisprudential rug in the guise of fact finding, but neither justice nor reason, neither public policy nor logic, compels us to do so here. *When questions of law dominate uncontroverted material facts, resort to fact finding from a congeries of irrelevant evidence is unnecessary.*" [8]

"Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. *To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution.*" [9]

The majority has failed to hold government officials accountable for their actions and are "creatively expanding" the panel opinion in *Rangel.* Because I believe that the majority is sanctioning the government's blissful ignorance of their informant's activities in order to secure a conviction, I dissent.

TEAGUE, J., joins.

8. *Brokers Title Co. v. St. Paul Marine Ins. Co.,* 610 F.2d 1174, 1177 (3d Cir.1979) (emphasis added.)

9. *Olmstead v. United States,* 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting) (emphasis added).