**Claude Oliver REEVES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 49165.**

Court of Criminal Appeals of Texas.

Dec. 11, 1974.

Jimmy James and Kenneth Douglas, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, Asst. Dist. Atty., Houston,

Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for murder; the appellant's punishment of imprisonment for forty-five years was assessed by the jury. In two grounds of error the appellant asserts that the trial court erred in failing to conduct a hearing to determine his mental competency to stand trial and in failing to charge the jury on the law of murder without malice.

On September 14, 1972, the appellant's counsel filed a "Motion for Sanity Hearing." Attached to that motion was a copy of a letter written on the stationery of a psychiatrist addressed to the appellant's trial counsel.[1] On December 4, 1972, be-

---

1.
RICHARD B. PESIKOFF, M.D.
AND ASSOCIATES
CHILD AND ADULT PSYCHIATRY
1020 HOLCOMBE SUITE 514
HOUSTON, TEXAS 77025
(713) 747-6334
September 6, 1972

Mr. Raymond A. Dickens, Jr.
Attorney at Law
3407 Montrose Boulevard
Houston, Texas, 77006
RE: Claude REEVES

Dear Mr. Dickens:

Mr. Claude Reeves has been seen in my office for psychiatric evaluation and treatment, and the following is a report of my findings.

Mr. Reeves was initially seen on June 19, 1972, at which time he indicated that he was currently out on bond after having shot and killed a man on May 3, 1972. He indicated that he has been feeling extremely jittery and depressed and has had frequent crying spells over the course of the last few weeks. He stated that at times he feels like dying and at one point held a gun against his head, but changed his mind. He states that he thought about his seven children and decided that he just couldn't kill himself.

Further conversation with Mr. Reeves indicated that he believes that there is a serious plot organized against him and his business. Mr. Reeves feels that somebody is trying to sabotage his radio dispatching business and has been calling in phony reports and interfering with his radio channels. He indicated that the neighbor whom he shot had "someone working behind him." Mr. Reeves indicated that there was somebody "revving him up" and encouraging him to antagonize him. Mr. Reeves indicated that on the night of the shooting the neighbor's children had jumped the patient's children and had assaulted one of his children who had had Legg-Perthes' disease. Following this the neighbor came over and had an argument with the patient at which point the patient indicates that he loaded a 30.30 rifle and shot him. Mr. Reeves indicates that he is sure this neighbor had been involved in spying on him and has been a part of this overall plot to ruin him. Mr. Reeves states that his neighbor has hooked up mirrors so that he could view him out of his living room window with the drapes partially open. Mr. Reeves is convinced that this neighbor is part of this whole design to bring about his demise.

MENTAL STATUS EVALUATION: Mr. Reeves presented as an obese, tall, anxious appearing white male who appeared his stated age of forty-one. His speech was somewhat shaky, but he used words adequately. He was circumstantial and tangential in his speech and his affect was one of mild depression and moderately severe anxiety. There was gross evidence of paranoid ideation in a delusional system throughout the interview. When allowed to speak freely Mr. Reeves continued on readily with his story about plots

fore announcing ready for trial the appellant's attorney moved to withdraw his motion for a sanity hearing. He stated that he felt the appellant was of "sound mind at this time" and that he had had an "opportunity to examine the medical reports submitted on behalf of the State by Dr. Sher and other doctors that had examined the [appellant]." The prosecutor then said to the Court " . . . the State would like to submit for the Court's consideration at this time copies of reports of Dr. Sher and other doctors for the court's consideration so that the court can be aware of the defendant's circumstances." The appellant's attorney stated he had no objection. We are at a loss to know why these medical reports were not marked for identification and why they were not made a part of the record at that time, but they were not.[2]

The court granted the motion, the jury was selected, and the trial commenced.

The appellant testified at length in his own behalf and was rigorously cross-examined. There was no evidence at the four day trial raising the defense of insanity or the appellant's competency to stand trial.

■ The test for determining competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Quintanilla v. State, 508 S.W.2d 647 (Tex.Cr.App. 1974); Sandlin v. State, 477 S.W.2d 870 (Tex.Cr.App.1972).

■ If the evidence which comes before the court from any source is sufficient to create in the judge's mind a reasonable ground to doubt the competency of the ac-

and people who were out to get him. He incorporated into this plot his neighbor whom he ended up shooting. He feels that the neighbor was part of this system to antagonize and cause his business to fail. Mr. Reeves was oriented in all spheres and his recent and remote memories were intact. His intelligence appeared to be in the average range. IMPRESSION: Schizophrenia—paranoid type, with a delusional system involving persecution.

RECOMMENDATION: Mr. Reeves was started on Parnate, 10 Mg. b. i. d. as an antidepressant, and Valium, 2 mg. twice a day for his anxiety.

It is the considered opinion of this examiner that Mr. Reeves because of the serious nature of his paranoia and his delusional system involving persecution, cannot be considered sane for purposes of standing trial. There is little doubt that because of his delusions, and his feeling that this neighbor was involved in a plot to ruin him, that his psycho-pathology interfered grossly with his capacity to test reality. At the time of the commission of the shooting, Mr. Reeves was not capable of understanding the difference between right and wrong and could not perform so as to be guided by what was really happening. His reality testing was and is extremely poor in regard to his delusional system and this has interfered enormously with his capacity to judge the rightness or wrongness of his behavior. Therefore, I strongly urge that this individual not be considered sane under the

M'Naughten rule and receive treatment for his psychiatric condition.

Mr. Reeves has continued to be seen in therapy since the initial evaluation. He has been seen on June 22, June 29, July 11, July 20, August 3 and August 31. His delusional system has continued to remain strong and he continues to believe that there is a serious plot against him.

Thank you very much for the opportunity to examine this individual. Please do not hesitate to contact me if I can be of further assistance.

    Sincerely,
    /S/ Richard B. Pesikoff
    Richard B. Pesikoff, M.D.
    Assistant Professor of Psychiatry
    Baylor College of Medicine
    Houston, Texas
    Diplomate of The American Board
      of Psychiatry and Neurology
      In General Psychiatry and Child
      Psychiatry.
RBP:nm

2. After the record had been approved in the manner required by Art. 40.09, Sec. 7, Vernon's Ann.C.C.P., and the appellant's brief had been filed in the trial court the record was supplemented by including a certificate made by the trial judge with two medical reports attached. Since this Court has not considered the certificate nor the attached medical reports in deciding the issue presented we need not determine the propriety of amending the record.

cused to stand trial he should conduct a hearing out of the presence of the jury to determine whether or not there is in fact an issue as to the competency of the accused to stand trial. Quintanilla v. State, supra; Ainsworth v. State, 493 S.W.2d 517 (Tex.Cr.App.1973); Perryman v. State, 494 S.W.2d 542 (Tex.Cr.App.1973).

The appellant asserts that: "In the instant case the issue of competency to stand trial was raised by the motion for a sanity hearing and by Dr. Pesikoff's psychiatric evaluation."

The mere suggestion in a motion by counsel coupled with a request for a psychiatric examination has been held to be insufficient to raise a reasonable doubt concerning a defendant's competency to stand trial. Marroquin v. State, 511 S.W. 2d 58 (Tex.Cr.App.1974); King v. State, 511 S.W.2d 32 (Tex.Cr.App.1974); Bowens v. State, 507 S.W.2d 785 (Tex.Cr.App. 1974). But the uncontroverted affidavit of an expert made two days before trial asserting that the defendant was "presently insane" combined with other circumstances has been held to raise a reasonable doubt concerning a defendant's competency to stand trial. Townsend v. State, 427 S.W. 2d 55 (Tex.Cr.App.1968).

■ Immediately prior to the announcements of ready the trial judge held a hearing and it was at this hearing that appellant withdrew his "Motion for Sanity Hearing." The letter attached to that motion was the unsworn statement of opinion made by the privately retained psychiatrist three months before the trial. The record does not show whether the psychiatrist had examined the appellant immediately prior to trial and if he did what his opinion was at that time. The record does show that the appellant's attorney withdrew the motion after he had knowledge of the opinions of other experts. The trial judge had an opportunity to observe the appellant's behavior and demeanor in the courtroom during the four day trial, and he heard the appellant's testimony which was extensive, clear, and lucid. The court could also give considerable weight to the opinion of the appellant's privately retained attorney. We have concluded that the trial judge did not abuse his discretion in failing to empanel a jury and hold a sanity hearing following the pretrial hearing in which the motion was withdrawn since the evidence and matters presented were not sufficient to raise a fact issue of the competency of the appellant to stand trial. In the subsequent trial on the merits there was no evidence from any source which would create in the judge's mind a reasonable ground to doubt the competency of the appellant to stand trial.

■ We will now consider the appellant's ground of error concerned with the court's failure to submit to the jury a charge on murder without malice. At the time of trial the appellant's attorney dictated into the record his specially requested charge on murder without malice. If the facts raise such an issue, dictating a requested charge into the record will not preserve error. Arts. 36.14 and 36.15, V.A.C. C.P. E. g., Seefurth v. State, 422 S.W.2d 931 (Tex.Cr.App.1967); Baity v. State, 455 S.W.2d 305 (Tex.Cr.App.1970); Black v. State, 503 S.W.2d 554 (Tex.Cr.App. 1974).

Three months after the trial, on the hearing of the appellant's fourth amended motion for new trial, the appellant's trial counsel was called as a witness and produced a three paragraph document that he said he had presented to the court at the time of trial. The document, worded the same as the dictated charge, is not designated as a requested charge; it bears no heading; it is undated and unsigned; it is not certified by the trial court; it bears no file mark or date. The attorney testified that he handed the document to the court. It was a rough draft he had made while preparing for trial. It was handed back to him, and he retained it in his files. The trial judge stated that he had "no indepen-

**414**

dent recollection of the offer of this purported requested charge . . ."

In order to preserve error specially requested charges which are refused must be certified by the trial judge, and the certified specially requested charge must be filed with the papers in the cause. Art. 36.-17, V.A.C.C.P. It is the duty of counsel to see that the requested charge is certified and filed.

The judgment is affirmed.

Opinion approved by the Court.