**Rojelio M. RANGEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56348.**

Court of Criminal Appeals of Texas, Panel No. 3.

May 16, 1979.

Rehearing En Banc Denied Sept. 19, 1979.

Marvin B. Zimmerman, San Antonio, for appellant.

Bill M. White, Dist. Atty. and G. E. Wilcox, James W. Blagg and Lisa M. Beck, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

Appeal follows a conviction for delivery of heroin. Based on prior felony convictions, punishment was enhanced to life imprisonment. Two grounds of error are presented. We affirm.

The first issue is whether the trial court erred by failing to require the State to produce a police informant as a witness. Richard Moreno, an undercover police officer, testified that he was introduced to appellant at a bar on July 24, 1975, by an informer named Johnny Rodriguez. Officer Moreno stated that appellant sold him heroin contained in a small balloon. According to the officer's testimony, Rodri-guez was not present when the sale of heroin was made. There were no other witnesses to these events.

Appellant offered a different version of facts. He testified that Rodriguez came alone to the bar the morning of July 24, 1975. At the time, Rodriguez was in need of a "fix" but could not get heroin because he owed money to his supplier. Appellant testified that Rodriguez then asked him to buy the heroin for him. Appellant took fourteen dollars from Rodriguez and purchased half a gram of heroin. After the purchase, appellant gave the heroin to Rodriguez in the presence of Officer Moreno.

During a pre-trial hearing on November 5, 1975, appellant's counsel filed a motion to compel the State to produce Rodriguez as a witness. Officer Moreno testified on cross-examination that Rodriguez was his informant, but he had "no idea" where Rodriguez was at that time. Appellant's counsel testified that he became aware that Rodriguez was a possible witness sometime shortly after September 22, 1975, but was unable to locate Rodriguez, despite "every effort possible." The trial court denied the motion.

Appellant's counsel filed a second motion requesting the State to produce the witness or dismiss the case on April 12, 1976, the first day of trial. Appellant filed a similar pro se motion the same day. Both motions were denied with instructions to the State to produce the witness if his location were discovered.

Both appellant and the State rely primarily on *Sigard v. State*, 537 S.W.2d 736 (Tex. Cr.App. 1976). Appellant concedes that *Sigard* requires only "that the process issue and due diligence be exercised in a good faith attempt to secure service of the process." Appellant does not contend that the State failed to make a good faith effort to serve process. He argues that in *Sigard* there was evidence that the prosecutor took additional steps to locate the witness through the national computer system and the penitentiary systems. The prosecutor further instructed an investigator to check

the neighborhood of the witness. Appellant contends that in the present case, "there is utterly no showing by the State of any efforts to locate the material witness Johnny Rodriguez."

Additionally, appellant relies on two federal cases which were cited by the court in *Sigard v. State*, supra. The cases of *United States v. Gentile*, 495 F.2d 626 (5th Cir. 1974), and *United States v. Hayes*, 477 F.2d 868 (10th Cir. 1973), held that the State is not required to actually produce a witness, but should provide the last known residence of the informer and reasonable assistance in locating him.

■ The State responds to these contentions in two ways. First, it contends that *Sigard* only requires a good faith effort to serve process, and the duty to provide assistance only arises if the State affirmatively acts to conceal the identity of the informant. The reference to *United States v. Gentile*, supra, and *United States v. Hayes*, supra, in the *Sigard* opinion demonstrates that when an informant's identity is revealed, the State should disclose the last known residence of the informer and provide "reasonable assistance" in locating that witness. The State is often in a uniquely superior position to acquire information about an informant's location, and it should make that information available to a defendant upon request. However, whether the State provided reasonable assistance must be determined on a case-by-case examination of the facts.

■ An examination of the record here convinces us that the State did provide reasonable assistance in locating Johnny Rodriguez. Officer Moreno voluntarily revealed the name of the informant to appellant's counsel during the pre-trial hearing, about five months prior to trial. The felony records department of the prosecutor's office was made available to appellant's attorney, along with the assistance of an employee of that office. Jail officials at the Bexar County jail assisted appellant's counsel in examining their records. Police officers voluntarily spoke with appellant's court-appointed investigator. It is apparent that

the State attempted to cooperate, but had no information which could aid in the location of Johnny Rodriguez. Therefore, the trial court did not err in refusing to instruct the State to produce the witness or dismiss the case.

Ground of error one is overruled.

In his second ground of error, appellant challenges an instruction given by the trial judge on the issue of entrapment. The portion of the charge in dispute reads as follows:

"Therefore, even if you believe from the evidence beyond a reasonable doubt that the defendant committed the offense as alleged, but you further believe, or you have a reasonable doubt thereof, *that he was induced to do so by Johnny Rodriguez, who was a person acting in accordance with instructions from a law enforcement agent, to-wit: Richard Moreno,* who used persuasion or other means likely to cause persons to commit the offense, and that the conduct of the said Johnny Rodriguez did not merely afford the defendant an opportunity to commit the offense, if any, you will find the defendant not guilty."

Appellant complains that the emphasized language above was improper because it required him to prove that the undercover officer (Moreno) specifically instructed the informer to entrap appellant.

■ The State responds by saying that error, if any, was not properly preserved. The objection to the charge made at trial did not refer to the issue now raised on appeal, so the State is correct that Art. 36.14, Vernon's Ann.C.C.P. was not complied with. *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App. 1976); *Jones v. State*, 481 S.W.2d 833 (Tex.Cr.App. 1972). However, appellant argues that he complied with Art. 36.15, Vernon's Ann.C.C.P. by submitting a specially requested charge. There is in the record a document entitled "Defendant's Requested Charge on Entrapment" which was filed with the clerk on April 13, 1976, the day before the charge was read to the jury. The document is not certified by the

judge, and defense counsel has the responsibility of obtaining that certification. *Reeves v. State*, 516 S.W.2d 410 (Tex.Cr. App. 1974). We concluded in *Reeves* that error was not preserved. However, an examination of the entire record in this case convinces us that the document was properly brought to the attention of the trial court and the *Reeves* case is distinguishable.

The statement of facts indicates that on April 14, 1976, the following transpired:

"THE COURT: All right, Mr. Zimmerman, you have a copy of the proposed charge of the court, do you not?

"MR. ZIMMERMAN: Yes, Your Honor.

"THE COURT: And you have filed written objections to the charge?

"MR. ZIMMERMAN: Yes, sir. I have filed both a requested charge and a written objection to the charge.

"THE COURT: Does the state have a copy of that?

"MR. WILCOX: Yes, sir. I have a copy, and I understand it centers around the definition of entrapment.

"THE COURT: Well, the objection to the charge will be overruled. And the special requested charge will be overruled. The Court feels that the charge as presented on Page 3 on the issue of entrapment is the proper charge."

In *Reeves v. State*, supra, the requested charge was dictated into the record at trial. Three months later at the hearing on the fourth amended motion for new trial, the defense counsel produced a document which he said was presented to the court at the time of trial. The trial judge indicated that he had no " 'independent recollection of the offer of this purported requested charge . . .' " The document was not dated or signed, and it was not designated as a requested charge.

The only similarity of this case to *Reeves* is failure by appellant's counsel to have the requested charge signed and certified by the trial judge as he should have done. However, the instrument is signed by counsel; it has the file date in the record; it is designated as a requested charge; and the statement of facts shows it was presented to the court and overruled. In light of these factors, we conclude that error, if any, was preserved for review.

The relevant portion of the charge requested by appellant was as follows:

"Now, therefore, if you find and believe from the evidence beyond a reasonable doubt that the defendant committed the offense of delivery of heroin as alleged in the indictment, but you further find, or have a reasonable doubt thereof, that the defendant engaged in the conduct charged because he was induced to do so by a 'law enforcement agent, to-wit: Johnny Rodriguez, using persuasion or other means likely to cause persons to commit the offense . . . you will acquit the defendant . . ."

The essence of appellant's argument is that Johnny Rodriguez should have been designated as a "law enforcement agent" as was done in his requested charge. Appellant reasons that the inclusion of the phrase "who was a person acting in accordance with instructions from a law enforcement agent" in the charge as given may have misled the jury into believing that those "instructions" must have been specifically to entrap appellant rather that to generally act as an informer.

The State correctly points out that V.T.C.A. Penal Code, Sec. 8.06(b) defines "law enforcement agent" as "any person acting in accordance with instructions from [law enforcement personnel]." The language of the charge given merely tracked that part of the statutory language, and by tracking the language of Sec. 8.06(b) the charge of the trial court correctly instructed the jury on the law of entrapment.

It seems that appellant would have a far better ground of error had objection been made to the State's jury argument on the entrapment issue and that objection then been urged on appeal. In arguing the charge, the prosecutor presented to the jury the issue of entrapment as follows:

"MR. WILCOX: And you will find under this entrapment flim flam thing that it says that you have to find that Johnny

Rodriguez got instructions from Richard Moreno to go over there and say, 'Go get me some heroin.'

"MR. ZIMMERMAN: Your Honor, I'm going to object to that.

"THE COURT: It will be overruled.

"MR. ZIMMERMAN: Please note our exception. He's misstating the charge.

"THE COURT: Overruled.

"MR. WILCOX: —that Richard Moreno has to have told Johnny Rodriguez, 'You go over there and get this man to sell to you, and you pretend that you're sick.'

"MR. ZIMMERMAN: Your Honor, I'll object to that, the charge in no way tells them that, 'You have to go over there and get—'

"THE COURT: Overruled."

Sec. 8.06(b) clearly requires some type of communication between the law enforcement official and his agent or informant, then action by the informant on this communication. The nature of this communication and the extent to which the informant must be instructed or controlled by the law enforcement official has yet to be determined by this Court. However, the mere classification or labeling of a citizen as a "police informant" is clearly insufficient when one considers the language of Sec. 8.06(b) and the practice commentary following. That commentary provides:

"The promotion of crime by anyone for the purpose of enforcing the law is questionable, and it certainly should not be permitted by agents *over whom the police have control.* Thus, the police should at the very least, apprise their agents of methods not to be used."

The quest in such cases is to determine the degree of police involvement and to judge whether that involvement provided only the opportunity for the criminal mind to commit the offense. *Lopez v. State,* 574 S.W.2d 563 (Tex.Cr.App. 1978). Such an examination must cover two areas.

The first area of inquiry should be the specific case at bar. A search must be made to determine if the officer specifically instructed his agent or informant to use an improper procedure to "make a case" against a particular defendant. If such specific instructions are discovered, the entrapment defense is available. It was this type of specific entrapment toward which the State directed its final remarks. However, there is a second area of inquiry to which attention must also be given.

The control or instruction from a police officer to his informant which would constitute entrapment may also be of a general nature. Such general control might arise when an informant has been used repeatedly. After the informant becomes "experienced," he realizes how to "set up" people to make cases. In such a situation, there is no specific instruction but the police official is still exercising control by failing to properly instruct his agents. Factors for consideration in such cases include number of cases this informant has been involved in and their disposition, if available; the amount and method of compensating the informant; the working relationship between the police officer and the informant; and his contacts with police officers.

Here, the record reflects that Rodriguez and Moreno had worked together on twenty-five to thirty cases and that Rodriguez had also worked with other police officers in making narcotics cases in the past. Therefore, the record contains much information supporting the general control type of entrapment. Whether this evidence supports entrapment as a matter of law is not an issue before us because appellant failed to bring this issue forward on appeal. Appellant's complaint concerned the charge of the court on entrapment, and that charge which tracked Sec. 8.06(b) is correct.

The judgment is affirmed.

CLINTON, Judge, dissenting.

The majority sets out a proper test for determining when an informant may entrap a defendant, admits that the evidence raises an issue as to whether the informant in this case entrapped appellant, and then approves a charge which does not adequately inform the jury of the law as it applies to the facts of this case.

The charge given by the trial judge did in part track the language of V.T.C.A. Penal Code, Sec. 8.06(b). However, the phrase "who was a person acting in accordance with instructions from a law enforcement agent" was ambiguous in that it failed to clarify how specific those "instructions" must be. Appellant's complaint is that the charge may be interpreted in two ways: (1) that the informant, Rodriguez, was acting under specific instructions from the undercover agent, Moreno, to entrap appellant, or (2) that Rodriguez was acting under general instructions to perform as an informant gathering information for drug offense arrests. The majority correctly states that under proper circumstances a jury could find entrapment in either of the above situations. However, the charge does not convey that fact to the jury, and it creates a substantial risk of misleading the jury into believing that only specific instructions to entrap will suffice.

The extent of the confusion caused by the charge given in this case is vividly demonstrated by the jury argument of the prosecution:

"MR. WILCOX: And you will find under this entrapment flim flam thing that it says that you have to find that Johnny Rodriguez got instructions from Richard Moreno to go over there and say, 'Go get me some heroin.'

MR. ZIMMERMAN: Your Honor, I'm going to object to that.

THE COURT: It will be overruled.

MR. ZIMMERMAN: Please note our exception. He's misstating the charge.

THE COURT: Overruled.

MR. WILCOX: —that Richard Moreno has to have told Johnny Rodriguez, 'You go over there and get this man to sell to you, and you pretend that you're sick.'

MR. ZIMMERMAN: Your Honor, I'll object to that, the charge in no way tells them that, 'You have to go over there and get—'

THE COURT: Overruled."

It is apparent from the above colloquy that both the State and trial judge believed that the charge instructed the jury to find entrapment *only* upon a conclusion that the

agent specifically instructed the informant to go to the bar and entrap appellant. This conclusion is further supported by a portion of appellant's jury argument objected to by the State:

"MR. ZIMMERMAN: Entrapment doesn't have to be by a uniformed law officer or by an undercover officer. And you're instructed right here that if he was induced by Johnny Rodriguez—

MR. WILCOX: We'll object to that as being a misstatement of the law. The law states very simply on Page 3 that he has to be induced by Johnny Rodriguez, acting on instructions from a law enforcement agent.

THE COURT: Sustained. The law is contained in the charge that you will take with you. And you will be guided by the charge of the Court."

If both the prosecutor and the trial court were so persuaded as to what the charge meant, there is no reason to believe that the jury understood otherwise. It is therefore unfathomable whether the jury rejected appellant's testimony that Rodriguez initiated the criminal activity or instead decided that Moreno did not specifically instruct Rodriguez to do so, thereby making an entrapment defense legally impossible. If the jury concluded the latter, the conviction would be based on an incorrect theory of law as demonstrated by the majority opinion.

The charge submitted by appellant attempted to rectify the problem by simply designating Johnny Rodriguez as a "law enforcement agent" and not including the "acting under instructions" language at all. His suggested charge was taken from Willson's Texas Criminal Forms, Sec. C–8.06 (Supp.1974). Such a charge would have been adequate to let the jury know that Rodriguez could have entrapped appellant through his own actions and would have avoided possible confusion about instructions given by the undercover officer.

Perhaps the best charge would be that suggested by Texas Criminal Pattern Jury Charges, Sec. 8.06 (1975), published by the State Bar of Texas. That charge would read as follows:

"Therefore, even if you believe from the evidence beyond a reasonable doubt that the defendant committed the offense as alleged, but you further believe, or you have a reasonable doubt thereof, that he was induced to do so by _____, who was a law enforcement agent, to wit: _____, who used persuasion or other means likely to cause persons to commit the offense, to wit: _____, and that the conduct of said _____ did not merely afford the defendant an opportunity to commit the offense, if any, you will find the defendant not guilty."

The first blank space would contain the informant's name. The second blank space would contain a brief explanation of the informant's relation to the police. For example, the charge might state, "to wit: a person acting under specific instructions from police agents to entrap (the defendant)." Or it might state, "to wit: a person assisting police agents on a continuing basis in obtaining information for drug offense arrests." Whatever the appropriate facts for the particular case, the charge would allow the judge to explain that the informant could have entrapped the defendant under a variety of agency theories and not only under specific instructions from an agent to entrap.

For these reasons I respectfully dissent.