Richard Wayne ENGLAND, Appellant,

v.

The STATE of Texas, State.

Nos. 2-86-135-CR, 2-86-136-CR.

Court of Appeals of Texas,
Fort Worth.

May 7, 1987.

Alley & Alley, and Richard Alley, Lee Ann Dauphinot, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Chris Marshall, Asst. Dist. Atty., Fort Worth, for the State.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

## OPINION

KELTNER, Justice.

This is an appeal from Richard Wayne England's two convictions of delivery of a controlled substance—heroin—of less than 28 grams, pursuant to TEX.REV.CIV. STAT.ANN. art. 4476–15, sec. 4.03 (Vernon Supp.1987). England pled guilty in both cases and the court assessed punishment at ten years in the Texas Department of Corrections on each conviction to run concurrently. His sole defense at trial was his claim of entrapment.

On appeal, England complains the trial court erred in overruling his motions to dismiss because entrapment was established as a matter of law.

We disagree and affirm the trial court's judgments.

England admits that on two occasions he sold heroin to E.B. Featherston, an undercover narcotics agent for the Arlington Police Department. However, England claims that he was induced to do so because of threats made against him by Charles Ertsberger, who at the time was an inmate in the Tarrant County jail.

Ertsberger and England had been friends for over ten years. They had known each other when they were both inmates at the Texas Department of Corrections. Ertsberger was an inmate in the Tarrant County jail when he asked to see E.B. Featherston. Featherston visited Ertsberger in the jail and the two reached an agreement whereby Ertsberger was to notify Featherston of potential drug and stolen property sales. Featherston told Ertsberger that he would buy, "anything you can get, anything from anybody." He gave Ertsberger his beeper number and told him to have people interested in making sales call the number.

Much of the discussions between Ertsberger and Featherston are in conflict. Ertsberger said that he made the arrangements with Featherston with the hope of getting some "help" on pending cases. At the time the arrangement was made, Ertsberger was on parole from a State court conviction and stood indicted of aggravated assault. He also faced a Federal charge of possessing firearms. Featherston testified that he did not make any promises with Ertsberger to help him on any cases, and would have been powerless to do so. Ertsberger testified that Featherston told him that he could possibly be of help, but did not testify to any specific promises or agreements. Ertsberger plea bargained on

the Federal charges and as a result, the State charge of aggravated assault was dropped. However, Ertsberger received the maximum sentence on the Federal charge. Ertsberger testified that he was upset upon receiving the maximum sentence and believed that Featherston had talked to the Federal prosecutors.

Regardless of the contradictions, both men agree that Featherston did not instruct or suggest Ertsberger to attempt to coerce or threaten third parties to engage in criminal activity with Featherston. Additionally, England was not singled out by Featherston as a potential target of an investigation. Instead, Ertsberger first contacted England and then told Featherston of the contact.

Ertsberger phoned England from a Tarrant County jail telephone. He testified that he contacted England several times before England agreed to sell Featherston narcotics. However, Ertsberger's testimony is conflicting on this issue. At one point, Ertsberger testified that he called England on over 500 occasions. However, on cross-examination, he testified that he called England between two and three times before England agreed to a sale. It should be noted that the inmates in the Tarrant County jail are not allowed to use money for the telephone. As a result, all calls that Ertsberger made to England were collect calls.

During one telephone conversation, Ertsberger told England that if he did not make a sale of narcotics to Featherston, Ertsberger would inform England's wife of his homosexual affair with a black man. At one point in his testimony, Ertsberger indicated that this statement was made jokingly. However, England testified that he took the statement seriously and considered it as a threat. At another point in the testimony, Ertsberger testified that he believed England took the statement as a threat. England also testified that Ertsberger threatened him with physical violence. However, Ertsberger was not questioned on that allegation.

After the statement regarding England's alleged homosexual affair, England made a sale of narcotics to Featherston. Ertsberger made no further threats regarding the revealing of England's homosexual conduct. However, two more sales of narcotics occurred.

Featherston testified that the first sale was made January 23, 1985, after he received a telephone call on his pager from England. Featherston testified that he picked England up in front of a house and was directed to go to a McDonald's parking lot where the two would wait for a dealer from the northside. When the dealer arrived, England got out of the car and returned with the heroin. England claims that Featherston contacted him by phone and that England was merely a go-between, handing a predetermined amount of money to an unnamed person in another car and receiving a package of an unknown substance. According to Featherston, the second sale occurred on January 29, 1985. Once again, England contacted Featherston by the pager. Featherston picked up England at his residence and was directed to a house. England went inside the house and returned with narcotics. Shortly thereafter, England contacted Featherston for the third time. They arranged to meet and did so. However, something happened that prevented the sale. The third sale occurred when Featherston picked up England at his house. They proceeded to the Zanzibar Club on the south side of Fort Worth. Featherston gave England $300.00 for the purchase of heroin. Instead of returning with the drugs, England disappeared.

The two did not see each other again until a surprise meeting in the Fort Worth jail. According to Featherston, he was walking through the jail and came face to face with England. Featherston testified that his cover was blown and England repeatedly told him, he was "going to get Ertsberger."

Featherston testified that he paid Ertsberger $30.00 after the first sale for the information.

Ertsberger testified that he made ten drug cases for Featherston. However, Featherston stated that the only case that

he had worked with Ertsberger was the England case. He stated that one of his previous partners had used Ertsberger as an informant. However, Featherston testified that he did not believe Ertsberger was reliable.

England claims that he proved entrapment as a matter of law, and as a result, was entitled to an order of dismissal.

There is no doubt that England's testimony raised the issue of entrapment. The test for entrapment is set out in section 8.06(a) of the Penal Code which states:

(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

TEX.PENAL CODE ANN. sec. 8.06(a) (Vernon 1974).

█ Once the issue of entrapment has been raised, it is a factual issue for the trier of fact, unless it is proved as a matter of law. *Melton v. State*, 713 S.W.2d 107, 113 (Tex.Crim.App.1986). If the evidence on the issue of entrapment is in conflict, the issue is not established as a matter of law and should be submitted to the fact finder. *Id.*, at 113,; *Wayne v. State*, 718 S.W.2d 393, 395 (Tex.App.—Dallas 1986, no writ).

█ However, once the trier of fact determines that there was an inducement, it is to consider only the nature of the State agent's activity without any reference to the predisposition of the particular defendant to commit the crime. *Rodriquez v. State*, 662 S.W.2d 352, 355 (Tex.Crim.App. 1984). This is purely an objective test and the vision of the trier of fact is focused solely upon the actions of the State. The entrapment defense is available when the criminal design originates with officials of the government or their agents and they induce a defendant to commit a crime that the defendant would not otherwise commit. *Richardson v. State*, 622 S.W.2d 852, 854 (Tex.Crim.App.1981).

The question of who is an agent of the State can be crucial. In making this determination, we are aided by section 8.06(b) of the Texas Penal Code, which states:

(b) In this section "law enforcement agent" includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

TEX.PENAL CODE ANN. sec. 8.06(b) (Vernon 1974). Fortunately, our Court of Criminal Appeals has rendered two decisions which aid us in applying section 8.06(b). *Soto v. State*, 681 S.W.2d 602 (Tex.Crim.App.1984); *Rangel v. State*, 585 S.W.2d 695 (Tex.Crim.App.1979).

In both *Soto* and *Rangel* the Court of Criminal Appeals stated that the extent to which the informant must be instructed or controlled by law enforcement officials, so as to make an informant the agent of the State is yet to be determined by the court. *Soto*, 681 S.W.2d at 604; *Rangel*, 585 S.W.2d at 699. However, it is clear that the mere labelling of an individual as a "police informant" is insufficient. *Soto*, 681 S.W.2d at 604; *Rangel*, 585 S.W.2d at 699.

█ If the law enforcement officials instruct an agent to use an improper procedure against a particular defendant, the entrapment defense is proved. *Rangel*, 585 S.W.2d at 699. There is no evidence that Featherston instructed Ertsberger to use any improper procedures to induce England into the commission of the crime. To the contrary, both Ertsberger and Featherston deny this allegation. However, general control may be sufficient when an informant has been used repeatedly. As stated in *Rangel*, factors to be considered are as follows:

Such general control might arise when an informant has been used repeatedly. After the informant becomes "experienced," he realizes how to "set up" people to make cases. In such a situation, there is no specific instruction but the police official is still exercising control by failing to properly instruct his agents.

Factors for consideration in such cases include number of cases this informant has been involved in and their disposition, if available; the amount and method of compensating the informant; the working relationship between the police officer and the informant; and his contacts with police officers.

*Id.*

The evidence on this issue is conflicting. Ertsberger testified that he had worked with Featherston on ten cases. Featherston denies this. Featherston testified to only one case. However, he admits that Ertsberger worked with one of his partners. The trier of fact was free to believe either version of the evidence on the degree of control over Ertsberger.

Other testimony on entrapment was conflicting as well. Ertsberger testified that he was joking about the threat of revealing England's homosexual love affair. However, he also testified that he would do anything to help make the case. Ertsberger claimed that he called England 500 times from a jail telephone. At other places, he admitted that the telephone calls were far fewer.

■ Repeated annoying telephone calls are not enough to induce a person to commit an offense, if they are not already so disposed. *Craver v. State*, 628 S.W.2d 155, 158 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd). Additionally, this court has held that threats to withhold payment of a roommate's share of rent and to withhold drugs is not a sufficient threat to even raise the defense of entrapment. *Gobin v. State*, 690 S.W.2d 702, 704 (Tex.App.—Fort Worth 1985, pet. ref'd).

■ The issue of entrapment was submitted to the trial judge as the trier of fact. The evidence on entrapment was conflicting. We cannot hold that entrapment was proved as a matter of law.

Having overruled the only point of error, we affirm the judgment of the trial court.