John Pershing JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 86 119 CR.

Court of Appeals of Texas, Beaumont.

Sept. 17, 1987.

Rehearing Denied Oct. 7, 1987.

Dissenting Opinion Corrected Oct. 15, 1987.

Randy McDonald, Taylor, Eggleston, Godwin & McDonald, Houston, for appellant.

Steve Greene, Asst. Dist. Atty., Liberty, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appeal from a conviction for the delivery of a controlled substance, to-wit: cocaine. In a juried proceeding, a verdict of guilty was returned. The jury fixed a punishment of 20 years in the Texas Department of Corrections and, additionally, assessed a fine of $20,000.

Appellant was indicted in Liberty County on October 23, 1985, charged with the delivery of cocaine in the aggregate amount exceeding 400 grams. The indictment alleged both an actual transfer and a constructive transfer. The actual transfer allegation was abandoned by the State. The case was tried on the constructive transfer allegation.

Before the indictment by the Liberty County Grand Jury, this Appellant was

also faced with an indictment in the Federal District Court for the Southern District of Texas. Later, the federal indictment was dismissed on the motion of the government. However, the federal indictment and State indictment arose out of the same transactions or occurrences.

We quote from the Appellant's brief:

"On October 18, 1984, the Appellant flew into this country a plane load of cocaine. It was approximately seven hundred (700) pounds of 93% to 99% pure cocaine. On October 1, 1984, the Appellant flew into this country approximately fourteen hundred (1400) pounds of marijuana.

"The State's contention was that Appellant flew into this country the above narcotics for personal gain of thirty thousand ($30,000) dollars and the promise of one hundred fifty thousand ($150,000) dollars for the cocaine."

■ The Appellant, with zeal, argues the defenses of entrapment and mistake of fact. Appellant says that he was approached by one Dave Ledford, who turned out to be a government informant. Ledford had been known to the Appellant in the past and Appellant said that Ledford disliked him immensely. This was because a pilot, recommended by Appellant, had crashed an airplane owned by Dave. We quote, again, from the Appellant's brief:

"Ledford had been involved in narcotics smuggling for ten (10) years prior to becoming a Government Informant, and the Appellant had on three (3) occasions worked with Ledford smuggling marijuana.

"After the falling out, Ledford and Appellant had not seen each other since 1980."

After a period of time, according to the accused, Ledford approached him and then the accused agreed to fly in the narcotics. The Appellant was told by Ledford that he would receive $30,000. for the first load of marihuana. Appellant maintains that he was led to believe that he was actually working for the drug enforcement agents and that he was also relying on an earlier immunity agreement. However Ledford, and a special agent named Spasaro, who was definitely identified as a Drug Enforcement Agent, denied just as vehemently that the Appellant was working for the government. We deem a jury issue arose on this matter.

In his first point of error, the Appellant argues that the evidence was insufficient to prove that the Appellant delivered over 400 grams (about 700 pounds) of cocaine by constructively transferring the same. The Appellant admits, in his brief, that the State's proof was that, on or about October 18, 1984, the Appellant flew in the cocaine, as per instructions—from whom these instructions came was in dispute—and delivered it to an airport in Liberty County. He delivered it, at the airport, to Michael P. Spasaro. From the Appellant's brief:

"The delivery occurred by the Appellant landing the plane and turning the cocaine over directly to Spasaro and his crew of off-loaders."

TEX.REV.CIV.STAT.ANN. Art. 4476–15, sec. 1.02(6) (Vernon Supp.1987) provides that a "delivery" includes the "constructive transfer" of a controlled substance. A "constructive transfer" has been defined as a transfer of a controlled substance, either belonging to an individual or under his control, by some other person or agency, at the instance or direction of the individual accused of such a constructive transfer. Henderson v. State, 681 S.W.2d 173 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd); Pulgarin v. State, 635 S.W.2d 195 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

■ There is one phase, or version, of the evidence to the effect that Appellant flew a plane load of cocaine into an airport at Cleveland and exited the plane, leaving it to Spasaro, an undercover agent for the Drug Enforcement Administration, to off load the "coke". The record raised a jury issue that Appellant thought Spasaro

worked for a large drug dealer who was paying the flight money or fee (for the flying in of the cocaine) of $150,000. to Appellant. Spasaro was indeed an undercover agent for the general government of Washington, D.C. We decide the record shows a "constructive transfer."

Appellant testified that Ledford told him that he (Ledford) was working with the federal government in trying to catch the largest known cocaine smugglers in Houston. Appellant testified that he agreed to fly two round trips to Central and South America and back to Texas, hauling narcotics. Appellant testified that Ledford told him the second load would be confiscated upon arrival by federal drug enforcement agents. Appellant argued that he was lead to believe that he was actually working for the drug enforcement agents. Appellant admitted he flew in a load of cocaine on October 18, 1984, to an airport at Cleveland.

■ A constructive transfer, under the Controlled Substances Act, includes a transfer of a controlled substance either belonging to the accused or under his direct or indirect control, by some other person or manner at the instance or direction of the accused. *Davila v. State*, 664 S.W.2d 722 (Tex.Crim.App.1984). *See also Rasmussen v. State*, 608 S.W.2d 205 (Tex.Crim.App.1980). In *Rasmussen*, when our Court of Criminal Appeals was called upon to construe the term "constructive transfer", the Court considered decisions of appellate courts in other states which addressed the same issue. *See Rasmussen*, at 209–10. One of the cases relied upon in *Rasmussen* was *State v. Guyott*, 195 Neb. 593, 239 N.W.2d 781 (1976).

In *Guyott*, the defendant told an undercover officer about certain drugs in a wastebasket in a restroom. The officer found the drugs in the wastebasket and agreed to pay defendant for them. The Nebraska Supreme Court held that the evidence was sufficient to prove a constructive transfer. *See Guyott, supra.* The facts in the present case are quite similar

to those in *Guyott*. Appellant left the cocaine in an airplane in order that Spasaro could take physical possession of the drugs, much as the defendant in *Guyott* left the drugs in a wastebasket so that the transferee could take possession of them. We hold that the evidence was sufficient to prove a constructive transfer from Appellant to Spasaro. Appellant's first point of error is overruled.

As a second subject of review, formerly known as "Ground of Error Number Two", the Appellant argues that his conviction should be reversed because the trial court made an error in allowing Dave Ledford to testify before the jury over the objections to hearsay statements allegedly made by the Appellant herein to Dwayne Ledford. Dwayne Ledford was the son of Dave Ledford. Dave was identified as a cooperating citizen or actually an undercover informant for Michael Spasaro, who was the case agent and the agent in charge of the undercover operation involved in this appeal. Dave was called to testify by the State. However, it is *important to note that he testified after Spasaro.*

The Appellant objects to the testimony of Dave to the effect that Johnson, the Appellant, came by Dwayne's place of business in Louisiana and that later Dave made a trip to West Memphis, Arkansas, to talk with Johnson. It was not shown that this evidence was made from Dave's own personal, actual knowledge. Neither was it shown that it was not. Dave made this answer:

"A  And was asking if I was there and my son told him no and so he left word with my son that when he talked to me to call him or get ahold [sic] of him, that he wanted to talk to me.

"Q  Did you subsequent to that contact Mr. Johnson?

"A  Yeah. After my son told me, I called him on the telephone and told him we would come up and talk with him and, I guess, that's when I went to West Memphis, the motel.

"Q  Did Mr. Johnson tell you what he wanted to talk to you about?

"A   After I got to West Memphis, yeah. We went over everything I was talking about or he was talking about.

"Q   Well, what did he contact you about?

"A   He asked my boy—he wanted to know if I had anything he could do and, of course, we've never done anything but haul dope together. So I didn't assume he wanted a job picking cotton.

"So that's what I went up there to talk about. We didn't talk about that over the phone, but in West Memphis after I got there in person."

Certainly a part of this exchange was traditional hearsay; it was obviously being offered for the truth thereof. It certainly involved out-of-court statements. Dwayne Ledford never testified in the case and; thus, the Appellant's lawyer was deprived of the opportunity to cross-examine Dwayne.

Following the oral arguments, as well as the briefs, we perceive that it is the Appellant's position that, if it is shown that Dave Ledford rather than the Appellant initiated the first phone call, then that fact makes out a complete defense, as a matter of law, that the Appellant was entrapped. Hence, the Appellant vigorously argues that, under certain telephone records that were obtained by the Drug Enforcement Administration, the initial phone call or phone calls were actually made by Dave. Hence, the Appellant was entrapped.

Appellant stoutly maintains that the only evidence of who initiated the first phone call is based on pure hearsay evidence which was objected to. Therefore, it has no probative force and constitutes reversible error. Appellant ably argues in his brief *Girard v. State*, 631 S.W.2d 162 (Tex. Crim.App.1982). Nextly, under this same point, the Appellant takes the position that only Dave Ledford could rebut the defense of mistake of fact since Dave was the only person present with the Appellant when the Appellant formed his own allegedly mistaken belief of what the facts were.

(Remember that the Appellant had taken the position that he was acting as an informal agent or cooperating citizen of some sort for the U.S. Government.) Under this two-pronged attack, Appellant says that such testimony could not be considered harmless. He argues reversible error occurred. *McKnight v. State*, 399 S.W.2d 552 (Tex.Crim.App.1966). Appellant basically contends that when there are two witnesses testifying concerning the same basic transaction, the Appellant taking one position and Dave taking a diametrically opposite position and the State being allowed to place in evidence a hearsay statement by Dwayne, then reversible error is shown. Furthermore, the accused argues this contention would be especially correct since it was shown, generally, that Dwayne was given an immunity agreement by the federal government. Appellant relies on *Barber v. State*, 481 S.W.2d 812 (Tex.Crim. App.1972).

■ After reading and analyzing the lengthy testimony of Spasaro, who appeared on the witness stand before Dave Ledford, we conclude that the hearsay testimony, to which the Appellant assigns error, had already been elicited by the Appellant during the cross-examination of Spasaro. Therefore, we conclude that Appellant waived the hearsay objection to this evidence concerning who made the initial move or the first telephone call. Certainly the Appellant carefully cross-examined DEA Agent Spasaro concerning the relevant, pertinent long distance phone calls between about August 5, 1984, and September 25 or 26, of 1984. Appellant elicited a good deal of information concerning a certain DEA form which related to the long distance telephone conversations that apparently took place between Dave and Appellant. There was some testimony that one phone call was made from John Pershing Johnson's home phone number to one phone that Spasaro knew was used by Dave. Also, there was evidence during this same cross-examination, from the DEA record, that Spasaro was told by Dave that

J.P. Johnson called Dave looking for work. That question was asked by Appellant of the witness, Spasaro. Spasaro replied in the affirmative: "That is correct." The government agent further testified that he had learned that Dave had been to see J.P. Johnson in West Memphis, Arkansas, at sometime prior to September 5, 1984. Then, too, in this first part of the cross-examination of Spasaro, there was a disagreement between counsel for the Appellant and the agent as to what the true telephone number of Dwayne was. Then, the second time, the counsel for the Appellant specifically asked the DEA agent if Dave Ledford had told him that J.P. Johnson had called first. The DEA agent answered:

"A. That is a correct statement."

That answer was unequivocal and stands unchallenged. By an agreement, which was approved by the trial judge, the prosecutors and the defense allowed Drug Enforcement Agent Spasaro to leave the stand before the cross-examination was complete to accomodate two short witnesses, the understanding being that the able attorney for the Appellant would still have the right to continue his cross-examination of Spasaro. Then, at the second stage of the same cross-examination, once again the Appellant's counsel asked Spasaro if Dave Ledford had told Agent Spasaro that Dwayne told Dave that J.P. Johnson had come by with some other individual sometime in August of 1984, and that event is what caused Dave, not acting as the first initiator, to then call J.P. Johnson. The questions and answers were:

"A With the exception it wasn't September. It would have been between August 20th and August 24th.

"Q I'll show you a DEA 6 form dated January 2nd, 1986. That's the *first reflection of such a conversation in your DEA 6 forms*, is it not?

"A Reflection as to what, sir?

"Q The reflection of such a meeting of J.P. Johnson and some other individual going by Ledford's son?

"A Wasn't that one in December?

"Q Yes, and that's the one, I believe, you recall that's related on or about September 17th, 1984 that Ledford told you that J.P. Johnson called him?

"A Are we talking about the—maybe I'm misunderstanding you.

"Q Do you need to see that report also?

"A No. I don't understand your question, sir. Are you referring to the same meetings or—

"Q Well, isn't it a fact that at least as far as your DEA 6 forms, not until January 2nd, 1986 is there anything related about J.P. Johnson and another individual coming by his son's whatever and wanting to work?

"A That would be the first time I put that on paper was in January. Around that time I did all those hotel trips and stuff.

"Q That would be on the 2nd day of January, 1986 and doesn't it relate that around some time in August or September of 1984 Ledford was contacted by his son who stated that— is that what it says there?

"A What was the question again?

"Q Well, was this DEA 6 form, does it say some time around August—September of 1984 SM3–840052 is contacted by his son who stated that J.P. Johnson and another individual stopped by and that's what precipitated Ledford to call him on August 24th; is that correct?

"A That's correct.

"Q And this is the first mention in your report of that?

"A That's the first time I put it on paper, yes, sir." (emphasis ours)

Viewing the entirety of Spasaro's testimony, and inasmuch as these matters were gone into with repetition and in detail by accused's counsel, we feel that the Appellant opened the door to this line of questioning. And he opened the door first, of course. Therefore, he waived any valid

objection that he might have had to the admission of this hearsay evidence. *Thomas v. State,* 572 S.W.2d 507 (Tex.Crim.App. 1978).

### The Objections to Dave Ledford's Testimony

Furthermore, subsequent to Appellant's objections to the questions put to Dave on direct, there was additional dialogue concerning what Dwayne told Dave, his father. Appellant took no "running bill of exceptions" or "running and continuing objections and exceptions." Again, we think, a subsequent waiver to hearsay testimony was effected. The record will reflect, we find, this actual answer:

"A Yeah. After my son told me, I called him on the telephone and told him we would come up and talk with him and, I guess, that's when I went to West Memphis, the motel.

No objection was made to that answer.

Then the able lawyer for Appellant, on cross-examination, asked this:

"Q Well, did you tell him whether or not you had a job?

"A Yeah. I told him the people I was working for, which was Martinez who was trying to get rigged up— he was telling me like 1,000 pounds of cocaine a weekend out of Columbia into the United States and that I was trying to get people, you know, other pilots to work for Martinez and give him descriptions of the airplanes and so forth.

"Q Did Mr. Johnson indicate he was interested in doing this?

"A Yes, he did."

There is ample evidence of probative force in the record without objection that was not hearsay evidence to the effect that Johnson wanted the work and that Johnson made the first inquiry to Dave. It is true that Ledford first told Appellant Johnson about the plan to import 1,000 pounds of cocaine per weekend from Columbia into the United States. Under this record, we see no error. We do find waiver and an opening of the door to this hearsay testimony on more than one occasion by the Appellant.

In *Thomas, supra,* at 513, it is clearly set out that *Nicholas v. State,* 502 S.W.2d 169 (Tex.Crim.App.1973), stands for the proposition that:

" '... the improper admission of evidence over objection is rendered harmless by the unobjected-to admission of other evidence of *substantially the same facts;* ... The rationale should be equally clear: if a fact be proven without objection, its erroneous proof over objection, although still error, is harmless error since the same facts have been proven without objection....' " (emphasis in original)

■ Furthermore, if the same or substantially the same facts are subsequently testified to at some length and without objection and without the benefit of a running bill of exception, then any error is waived. *Moulton v. State,* 486 S.W.2d 334 (Tex.Crim.App.1971). *See Williams v. State,* 479 S.W.2d 300 (Tex.Crim.App.1972). We overrule point of error number two.

### The Defense of Entrapment

■ On the defense of entrapment, we conclude that the trial court charged the jury in virtually the identical manner as was set out and approved in the case of *Rangel v. State,* 585 S.W.2d 695 (Tex.Crim. App.1979). In view of the fact that we have determined that there is proper, probative evidence in the case before the jury that the accused took the first step in this dramatic criminal episode, we think a jury issue was raised under this record and the jury had a right to believe and find that Dave only afforded the Appellant an opportunity to commit the offense of delivery of a controlled substance; and, then, only after the Appellant made the first move or inquiry. We certainly do not find, as a matter of law, that the original Drug Enforcement Agent, Spasaro, gave specific

instructions to Dave to entrap John Pershing Johnson. Indeed, reviewing the entire record, as well as the numerous questions and answers elicited by the attorney for the Appellant, it appears that the real target of this DEA affair was a person identified in the record as Idonell Martinez. Although the compensation to Appellant for the flights into Cleveland was large in dollars; nevertheless, these payments were not out of line.

Also it should be remembered that Appellant's ground of error is that the trial court fell into error by failing to submit a specifically requested instruction in the court's charge on the law of entrapment. The jury could have taken the position that they did not have a reasonable doubt that the accused was not induced by Dave, the informant, acting under specific instructions from government agents to entrap the accused by such persuasion or other means that were likely to cause persons to commit the offense charged. Indeed, this is what this jury did.

In fact, Appellant's eleventh ground of error reads as follows:

"Whether the trial court committed error by failing to submit a specifically requested instruction in the court's charge applying the law to the facts as to the instructing on the defense of entrapment."

The relevant portion of the trial court's charge to the jury reads as follows:

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant committed the offense of Delivery of a Controlled Substance, Namely: Cocaine of at least Four Hundred Grams or More as alleged, but you further believe, or you have a reasonable doubt thereof, that he was induced to do so by Dave Ledford, who was a law enforcement agent, to-wit: an informant acting under specific instructions from police agents to entrap the defendant by persuasion or other means likely to cause persons to commit the offense and that such conduct of said Dave Ledford did

not merely afford the defendant an opportunity to commit the offense, if any, you will find the defendant not guilty."

After the court's charge was drafted, Appellant's counsel made the following objection and specially requested an instruction:

"[Appellant's Counsel] Judge, I would object to the charge on entrapment and ask the Court for permission to dictate into the record what I would prefer the charge to be. Going to the third paragraph on page four that reads, 'Dave Ledford, who was a law enforcement agent, to wit, acting under the specific instruction for police agents to entrap the Defendant by persuasion or other means.' I think it should read, 'To wit an Informant acting for the Drug Enforcement Administration in a continuing investigation of narcotics violation.' That more aptly, I believe, suits the facts of this case.

"[The Court] You want to request that that charge be given?

"[Appellant's Counsel] Yes, sir.

"[The Court] It is denied."

■ Appellant argues that the charge given did not adequately inform the jury of the law as it applied to the facts of this case. He argues that the trial court's charge lead the jury to believe that for the defense of entrapment to exist, police agents must have specifically told Dave Ledford to entrap Appellant. We agreed with Appellant's assertion that the record reveals no evidence of such specific instructions to entrap the Appellant in particular. However, Appellant's point of error complains only that the trial court erred in refusing to give the instruction Appellant requested. We find that the instruction requested by Appellant failed to address the critical issue of whether the informant acted in conformity with some instructions from law enforcement personnel. *TEX. PENAL CODE ANN. sec. 8.06(b)* (Vernon 1974) defines "law enforcement agent" as "any person acting in accordance with instructions from.... [law enforcement personnel]". The Court of Criminal Appeals

has held that a requested instruction which fails to address the issue of whether the informant acted in accordance with instructions is insufficient. *Rangel v. State,* 585 S.W.2d 695, 699 (Tex.Crim.App.1979). Since Appellant's requested instruction failed to address the issue of instructions from law enforcement personnel in any way, the trial court did not err in refusing to give the specially requested instruction. Appellant's eleventh ground of error is, therefore, overruled; hence, under this record, the accused was not entrapped.

In his grounds of error numbers three through six, Appellant argues that the trial court improperly limited his cross-examination of Dave Ledford. Appellant's third point of error reads as follows:

"The conviction should be reversed because the trial court errored [sic] in failing to allow Appellant opportunity to present evidence that would have shown the trier of fact the method used by Dave Ledford as an informer for the Drug Enforcement Administration to show that he had been instructed by the DEA."

■ Because Appellant's arguments as to his grounds of error numbers three through six are combined, it is difficult to determine just what action of the trial court is complained of in ground of error number three. However, we believe that Appellant is referring to the trial court's refusal to allow four tape recordings into evidence before the jury. The tapes evidently contained conversations between Dave Ledford and several other persons, not including Appellant. The trial court sustained the State's objection that these tapes were irrelevant to this case after hearing the tapes outside the presence of the jury. Appellant argued that the tapes showed the methods by which Dave Ledford operated as an undercover agent for the Drug Enforcement Administration. Then, Appellant's counsel offered defense exhibits 11, 12, and 13 "for a bill of exception." Since these tapes are not included in the record filed with this Court, we cannot

determine whether the trial court erred in excluding them from evidence. *Fulshear v. State,* 59 Tex.Crim. 376, 128 S.W. 134 (1910). We note that the transcript contains a specific approval of the record which was signed by the trial judge on August 7, 1986. It states that neither party presented any objections to the record within fifteen days after notice by certified or registered mail. *See TEX.CODE CRIM. PROC.ANN. art. 40.09, sec. 7* (Vernon 1979). This ground of error presents nothing for review and is, therefore, overruled. Simply stated, we have nothing to review on this issue.

■ By his fourth ground of error, Appellant argues that the trial court erred in refusing to allow him to offer evidence of specific acts of misconduct or violations of law by Dave Ledford, which evidence was offered to show bias, prejudice, and motive for Ledford's testimony. By his fifth ground of error, Appellant argues the trial court erred in refusing to allow cross-examination of Dave Ledford as to an immunity agreement between the federal government and Dwayne Ledford. Appellant made no bill of exceptions showing what the excluded testimony would have revealed as required by *TEX.CODE CRIM. PROC.ANN. art. 40.09, sec. 6(d)(1)* (Vernon 1979). Therefore, Appellant's grounds of error numbers four and five present nothing for review. *See Johnson v. State,* 462 S.W.2d 955, 957 (Tex.Crim.App.1971). These grounds of error are overruled.

In his sixth ground of error, Appellant urges that, due to the errors urged in grounds three through five, the trial court so limited his right to cross-examine Dave Ledford that cumulative error was committed. Since we have necessarily held that grounds of error three through five present nothing for review, this ground of error is without merit and is overruled.

By his seventh and eighth grounds of error, Appellant urges that the trial court erred in instructing the jury in accordance with *TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4* (Vernon Supp.1987). Appel-

lant's seventh point of error complains that the instruction mandated by *art. 37.07, sec. 4* constitutes a legislative encroachment upon the constitutional powers of the judiciary in violation of the doctrine of separation of powers. Appellant's eighth ground of error similarly complains that such an instruction violates the separation of powers doctrine because it is an encroachment by the legislature upon the clemency powers of the executive branch of our government. In the trial court, Appellant raised no objection to the court's charge to the jury based on either of these grounds. Appellant did raise other objections to this portion of the charge.

■ *TEX.CODE CRIM.PROC.ANN. art. 36.14* (Vernon Supp.1987) states, in part, that:

> "Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same *and he shall present his objections* thereto in writing, *distinctly specifying each ground of objection....*" (emphasis added)

The Court of Criminal Appeals has held that "[t]his article is mandatory and there must be strict compliance with its provisions to warrant review." *Pennington v. State,* 697 S.W.2d 387, 390 (Tex.Crim.App. 1985). Because Appellant's objections at trial did not comport with these contentions on appeal, nothing is presented for review. *See Pennington, supra.* Appellant's seventh and eighth grounds of error are overruled.

■ Appellant's ninth ground of error complains that the trial court erred in instructing the jury as to the law of good time credit and parole as required by *art. 37.07* because the statutory instruction unconstitutionally invites the jury to speculate on matters outside its task of assessing proper punishment. Appellant's tenth ground of error complains that this instruction is unconstitutional because it is confusing and vague. Appellant argues that the charge informed the jury of facts concerning parole and good time credit law, thereby encouraging the jury to speculate as to whether, and in what degree, such law would later apply to the Appellant in particular, thereby denying his right to a fair trial. Appellant also argues that the instruction is confusing to the jury because after it informs them of the law on parole and good time credit, it instructs them not to consider how such law might apply to the defendant. We must, however, presume that jurors are reasonable persons who can be trusted to follow their oaths and instructions. *See Boudreaux v. State,* 723 S.W.2d 230 (Tex.App.—Beaumont 1986, no pet.). We hold that *art. 37.07, sec. 4,* does not violate the due process clause of the *U.S. Constitution amend. XIV,* nor does it violate the due course of law provision of *TEX. CONST. art. 1, sec. 19.*

■ Appellant also argues that *art. 37.07, sec. 4,* is unconstitutionally ambiguous. This argument is based on the fact that the statute refers to *TEX.CODE CRIM.PROC. ANN. art. 42.12* (Vernon Supp.1987) as a guide in determining whether the instruction should be given and in what form. *TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4(a)(b)(c)* (Vernon Supp.1987). There are certainly ambiguities raised by the fact that such cross-references do not lead a trial court to the proper information to determine which form of the *art. 37.07, sec. 4,* instruction to use. However, since Appellant did not raise this ground of objection in the trial court, nothing is presented for review by such argument. *See Pennington, supra.* Furthermore, Appellant has not demonstrated how such a defect in the statute operated to deny him a fair trial. He does not argue that the trial court improperly applied the statute in drafting the charge in this case. Therefore, Appellant's ninth and tenth grounds of error are overruled.

In ground of error number twelve, the trial court is said to have erred in failing to grant Appellant's motion for speedy trial under the Speedy Trial Act, *TEX.CODE CRIM.PROC.ANN. art. 32A.02* (Vernon

Pamph.Supp.1987). The Court of Criminal Appeals in *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim.App.1987), has held the Speedy Trial Act unconstitutional. We, being an intermediate court, conform our opinion to that ruling. Hence, we declare the Speedy Trial Act unconstitutional. All of Appellant's alleged errors are disallowed.

It is noteworthy that there is evidence in the record that when the accused departed the scene of the Cleveland airport, he unknowingly was driven by another undercover agent—not Spasaro. Later, Appellant was concerned about this driver and reported, in substance, to Dave that he thought his driver was "the man". There was further conversation between the accused and Dave to the effect: what do you mean by "the man"? Appellant replied that the man or the driver was possibly a drug enforcement agent. Also, the fact that the Appellant left the plane and the Cleveland airport immediately and insisted on being conveyed in a vehicle which did not contain any of the contraband, tends to explode the "mistake of fact" issue. We think this strongly demonstrates that Johnson was not acting under a mistake of fact and that he did not believe in his own mind that he was acting as a cooperating citizen for the drug enforcement agency. Under this record, it was a jury issue and the jury found adversely to our Appellant. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim. App.1984) (Opinion on Rehearing); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App. 1983) (Opinion on Rehearing). Query: Why was this case tried in the State District Court when the record strongly demonstrates that this was a federal DEA investigation and surveillance?

We affirm the judgment and sentence below.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent to the majority's disposition of the points of error relating to the jury charge pursuant to *TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4* (Vernon Supp.1987). Until settled by our Court of Criminal Appeals, I continue to dissent as noted in *Boudreaux v. State*, 723 S.W.2d 230 (Tex.App.—Beaumont 1986, no pet.). I would also hold, when necessary, that the instruction is so erroneous and violative of due process that it is fundamental error which rises to egregious harm under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984).

Further, on the authority of *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim.App.1987), I would hold it unconstitutional as violative of the separation of powers doctrine.