IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1438-12






JOSE LUIS VEGA, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


JOHNSON COUNTY





 Cochran, J., delivered the opinion of the Court in which Keller, P.J., and
Price, Womack, Johnson, Keasler, Hervey, and Alcala, JJ., joined. Meyers,
J., did not participate.


O P I N I O N 


 

 After rejecting his entrapment defense, a jury convicted appellant of three drug
offenses. On appeal, he complained that the trial judge reversibly erred by not instructing
the jury accurately on his entrapment defense because the application instruction did not list
inducement by the confidential informant as well as inducement by an undercover officer. 
The court of appeals, relying on Posey v. State, held that appellant's failure to request that
specific application instruction, or object to its omission, forfeited the issue on appeal. (1) We
granted review to reiterate that, when a trial judge instructs on a defensive issue, he must do
so correctly; (2) thus any error in the charge actually given is subject to review under Almanza. (3) 
Here, the judge's failure to list the confidential informant in the application charge was
harmless because the entrapment instructions, taken as a whole, provided the jury with an
adequate vehicle to fully consider and give effect to appellant's entrapment defense. 

I.

 A confidential informant ("Jerry") told Special Crimes Unit Investigator Marshall
Whitlock that appellant was a drug dealer in Tarrant County who could deliver a large
quantity of methamphetamine to Johnson County. Undercover Officer Whitlock contacted
appellant and arranged to purchase one ounce of methamphetamine from him for $1,400. 
They agreed to meet on August 5th at a Waffle House in Johnson County.

 Officer Whitlock wore a recording device that captured some video, and all of the
audio, of the drug deal. Appellant provided the drugs, the pair weighed them, and then
appellant counted the money. Officer Whitlock asked appellant about the quality of the
drugs, and appellant told him, "In all reality, dude, if there is an issue, let me know and I will
fix it." Appellant was relaxed and "talked about his ability to obtain more than what was
purchased that day." He offered Officer Whitlock advice on how to "dub" the drugs out, thus
cheating the buyer and making more money. Appellant also explained that "I have a real
sweet deal going on at Fantasy Ranch where I get to do all the business I want and the
managers all look the other way and no one cares." He talked about his desire to cut out the
middle-man and bragged about dealing in "meth," "ice," and "coke."

 A couple of days after the initial sale, appellant contacted Officer Whitlock, texting,
"Were u going to need more ice this week?" Eventually, they made a deal for another ounce
of methamphetamine. Just hours before the scheduled August 19th meeting, Officer
Whitlock doubled his order to test appellant's connections. Appellant came to the Waffle
House with the two ounces, and, as appellant was counting the money, Officer Whitlock
asked him about buying a "QP"-a quarter pound. "QP" was the code word for the "bust"
team to come in and arrest appellant, which they did. Besides the two ounces, appellant had
three plastic bags of marijuana on him and another 1.32 grams of methamphetamine in his
car. This "buy-bust" was also recorded.

 Appellant admitted delivering the drugs, but he raised the defense of entrapment to
the first sale: "Jerry" had induced him to sell drugs. Appellant testified that he and his wife
have a critically ill toddler and no health insurance. Appellant earned too much money for
the couple to qualify for Medicaid, but too little to afford a policy covering pre-existing
conditions. The couple split up, so that his wife would qualify for assistance as a single
mother. Appellant also said that he was in danger of losing the salesman job he had held for
several years. Depressed and lonely, appellant began going to the Fantasy Ranch-a Tarrant
County topless bar-to drink and talk to people. 

 A gentleman come by and he talked to me and his name was Jerry, and he was
interested in me and he wanted to talk to me, bought me drinks. And I-he
basically befriended me when I didn't have any friends and I was looking to
have someone I could really talk to.

 . . .

 He had a lot of money. He had his wallet and he took out his money and he
was like, I want to help you. And . . . I accepted his help. I wasn't going to
turn it down. It was money that I needed to put to the side for my daughter. (4)


Appellant testified that "Jerry" gave him $500. When appellant asked him how he kept his
wallet full, "Jerry" introduced him to both Dreamer-a dealer-and Officer Whitlock-a
"buyer." Dreamer supplied appellant with the methamphetamine that he sold to Officer
Whitlock. Appellant made $200 for the first delivery, (5) and he was supposed to make $400
for the second delivery.

 Appellant testified that the State failed to offer some of the text messages between
himself and Officer Whitlock, including "the one where I had Whitlock begging me to come
back up there and do a delivery for him." Still, appellant admitted that he initiated the second
deal: "I was not induced on the second one . . . I was not forced . . . . They flashed money in
front of me and I needed it." He also admitted to selling cocaine and marijuana.

 Appellant said that he sold drugs to six or seven people at Fantasy Ranch, beginning
toward the end of July before any delivery to Officer Whitlock. He said that "Jerry"
suggested the first sale, but his comfort with the drug business quickly grew:

Q What quantities did you buy from Dreamer? How much meth at a time did you buy
from Dreamer?


A I will buy sevens and half ounces.


Q Besides meth, what else did you sell?


A Once again, after I got introduced to it and I figured out there was money to be made,
that I could, since he was there to provide other things, I started selling weed as well.


 Still, appellant insisted that the dealer persona he presented to Officer Whitlock was
an act: "I've been trained my entire life in customer service, and that is just how I react to
people. I'm always friendly. I'm always nice. I'm always trying to be helpful to people."

 Although the record does not reflect whether appellant requested it, the trial judge
included abstract and definitional instructions concerning the defense of entrapment. (6) The
entrapment application paragraph read as follows:

 Therefore, if you believe from the evidence beyond a reasonable doubt that the
defendant committed the offense as alleged, but you further believe, or you
have a reasonable doubt thereof, that he was induced to do so by Marshall
Whitlock, a law enforcement officer, by persuasion or any other means likely
to cause persons to do so, and that the conduct of Marshall Whitlock did not
merely afford the defendant an opportunity to commit the offense, if any, you 
will find the defendant not guilty.


 Appellant did not object to the entrapment instruction as given by the trial judge. The
jury rejected appellant's entrapment defense and convicted him of two counts of delivery of
a controlled substance and one count of possession of a controlled substance. He was
sentenced to imprisonment for 10 years, 25 years, and 5 years, respectively.

 On direct appeal, appellant claimed that "[a] missing instruction on inducement by
confidential informants impermissibly narrowed the facts under which the jury could find
entrapment, undercutting Appellant's defense and causing egregious harm." Appellant
argued that inducement by "Jerry" (as well as Officer Whitlock) should have been included
in the application paragraph. (7) The court of appeals held that Posey v. State, foreclosed relief:

 In one issue, Vega contends that the jury charge was erroneous because it was
missing an instruction on inducement by criminal informants, in other words,
entrapment by a confidential informant. Entrapment is a defensive issue. Vega
did not request this particular instruction and did not object to its omission in
the charge; thus it is not preserved. The principles of Almanza do not apply to
omissions from the jury charge of defensive issues that have not been properly
preserved by a defendant's request or objection. Because Vega's complaint has
not been preserved, his sole issue is overruled. (8)

 The court acknowledged in a footnote that the jury charge did include an instruction
on entrapment by a law-enforcement officer. (9)

 Appellant petitioned this Court for review, arguing that the court of appeals should
have analyzed the alleged error under Almanza. (10) He further argues that the failure to name
"Jerry" as a "law enforcement agent" in the application paragraph resulted in egregious harm
because it gutted his defensive theory of entrapment.

II.

 The trial judge is "ultimately responsible for the accuracy of the jury charge and
accompanying instructions." (11) Article 36.14 states that "the judge shall, before the argument
begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written
charge distinctly setting forth the law applicable to the case." (12) The trial judge has the duty
to instruct the jury on the law applicable to the case even if defense counsel fails to object
to inclusions or exclusions in the charge. (13) But Article 36.14 imposes no duty on a trial judge
to instruct the jury sua sponte on unrequested defensive issues because an unrequested
defensive issue is not the law "applicable to the case." (14) A defendant cannot complain on
appeal about the trial judge's failure to include a defensive instruction that he did not 
preserve by request or objection: he has procedurally defaulted any such complaint. (15)

 However, if the trial judge does charge on a defensive issue (regardless of whether he
does so sua sponte or upon a party's request), but fails to do so correctly, this is charge error
subject to review under Almanza. (16) If there was an objection, reversal is required if the
accused suffered "some harm" from the error. (17) If no proper objection was made at trial, a
reversal is required only if the error caused "egregious harm." (18)

III.

A. Entrapment was "law applicable to the case."

 In a short opinion, the court of appeals held that appellant had forfeited his sole issue
on appeal under Posey. But this case is not like Posey. Posey had complained on appeal that
the trial judge reversibly erred by not sua sponte instructing the jury on the defense of
mistake of fact. Posey had not requested this instruction, nor had he objected to its absence
in the jury charge, and the trial judge gave no mistake-of-fact instruction whatsoever. There
was no error, because mistake of fact had not become "law applicable to the case." But, as
we held in Barrera v. State, once the jury is charged on a defensive issue, a flaw in that
charge is error:

 This case presents a different issue from that in Posey, however. Rather than
omitting an instruction altogether, the trial court in this case failed to apply an
abstract instruction to the facts of the case. That is to say, even without a
request, the trial court included the law of self-defense in the charge to the
jury. A trial court has no duty to sua sponte charge the jury on unrequested
defensive issues raised by the evidence. However, having undertaken on its
own to charge the jury on this issue, the trial court in this case signaled that
self-defense was "the law applicable to the case." Therefore, any flaw in the
charge on self-defense amounts to an error in the charge, even under the
reasoning of Posey. (19)

In this case, the jury charge contained the correct abstract definition of the entrapment
defense, and the correct definition of the term "law enforcement agent." (20) The application
paragraph then instructed the jury to find appellant not guilty if it believed that he committed
the offense because he was induced to do so by "Marshall Whitlock, a law enforcement
officer[.]" The defense of entrapment was "law applicable to the case." Therefore, any
defect in the charge on entrapment amounts to an error in the charge, even under Posey. (21) 
The court of appeals, in holding otherwise, read Posey too expansively.

B. The jury charge erroneously failed to apply the law of entrapment to "Jerry."

 We agree with appellant's argument on direct appeal that the jury should have been
instructed to find appellant not guilty if it believed that he was induced to commit the first
drug sale either "by Jerry, acting as a law enforcement agent," or by Marshall Whitlock, or
by both. (22) When a definition or instruction on a defensive theory of law--such as
entrapment--is given in the abstract portion of the charge, the application paragraph must
list the specific conditions under which a jury is authorized to acquit. (23) Officer Whitlock
testified that he learned about appellant through a confidential informant, "Jerry," and that
"Jerry" worked for the STOP Special Crimes Unit. "Jerry's" status as a "law enforcement
agent" as that term is defined in Texas Penal Code § 8.06, was not in dispute. (24) The evidence
showed that "Jerry" was an agent acting under the control of law-enforcement officers, and
appellant testified that it was "Jerry" who suggested that he deliver drugs to Officer
Whitlock. The trial judge erred in failing to list "Jerry" as a person acting as a law-enforcement agent in the entrapment application paragraph. 

C. Appellant was not harmed by the error in the jury charge.

 Appellant did not object to the jury charge at trial, so he must show that he suffered
egregious harm from the charge error to be entitled to reversal. (25) Under Almanza, we assess
whether the defendant has suffered actual harm "in light of the entire jury charge, the state
of the evidence, including the contested issues and weight of probative evidence, the
argument of counsel and any other relevant information revealed by the record of the trial as
a whole." (26) We find the error here "obviously harmless." (27)

 First, the jury charge indirectly covered inducement by "Jerry" because (1) the
definition of "law enforcement agent" informed the jury that "Jerry" was "a person acting
in accordance with instructions from a law enforcement agent," for purposes of the
entrapment defense, and (2) the application charge covered inducement by "Marshall
Whitlock, a law enforcement officer, by persuasion or any other means," and the jury was
free to consider "Jerry" as Officer Whitlock's "means." (28) "Jerry" was, in essence, merely an
extension of Officer Whitlock and acted at his behest.

 Turning to the second Almanza factor-the evidence at trial-appellant testified to initial
inducement by "Jerry," and further persuasion by Officer Whitlock. Appellant's sole
defensive theory was entrapment, but that defense applied only to one of the three drug
charges, and it was a marginal theory at best. As the State points out, the prosecutor
"thoroughly impeached appellant's tale of woe on cross-examination," (29) establishing that:
(1) appellant's first drug sale at Fantasy Ranch occurred before his August 5th drug delivery
to Officer Whitlock; (2) appellant liked the easy money afforded by the drug trade, and he
admitted initiating the second drug delivery to Officer Whitlock; (3) appellant sold a variety
of drugs (cocaine, methamphetamine, and marijuana), to numerous people besides Officer
Whitlock; and (4) appellant was well versed in the vernacular of the drug trade and had
considerable expertise and connections for a person supposedly new to the trade. There was
but the barest scintilla of evidence that "Jerry's" friendship and offer of monetary "help"
induced an otherwise law-abiding appellant to enter the drug trade. (30) The State's argument
that "Jerry's" friendship and gift of $500 merely gave appellant an opportunity to commit an
offense has considerable merit. 

 As for the third Almanza factor-the arguments of counsel-neither the State nor the
defense suggested that there was any distinction between "Jerry" and Officer Whitlock. The
State urged the jury to reject the defense, not because "Jerry" was not a "law enforcement
agent," but because appellant was in it for the money. The defense characterized the
entrapment as part of a case of overreaching: STOP used a confidential informant, an agent
of law enforcement, to lure the vulnerable appellant from Tarrant County to Johnson
County-a place to which he had never before been-to make a drug case for Johnson County.

 Applying a straightforward Almanza analysis, we conclude that appellant's rights
were not harmed at all, much less "egregiously harmed," by the failure to specifically name
"Jerry" in the entrapment application paragraph.

 Although the entrapment application paragraph should have listed "Jerry" as well as
Marshall Whitlock, the jurors were well aware of "Jerry's" role as a law-enforcement agent
acting at Officer Whitlock's behest from (1) the definitional section of the entrapment
charge, (2) the evidence, and (3) the parties' arguments. Therefore, while we disagree with
the court of appeals that appellant failed to preserve this jury-charge issue, we conclude that
appellant has failed to show egregious harm, and we affirm the judgment of the court of
appeals. 

Delivered: March 20, 2013

Publish
1. Vega v. State, No. 10-11-00327-CR, 2012 WL 3799176, *1 (Tex. App.--Waco 
August 30, 2012 ) (not designated for publication).
2. Appellant's sole ground for review asks

 Whether a charge on entrapment that instructed the jury as to the incorrect person
inducing appellant to sell drugs was an omission of a defensive issue that required
preservation or an "error" reviewable under Almanza.
3. Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).
4. Appellant admitted that he did not use any of his drug earnings to help with his
daughter's medical expenses.
5. He testified that the $200 fee


 is what I agreed with on Jerry that I would transport it to and make money and
Jerry-when he introduced me to Whitlock, told me he . . . didn't want anything
else to do with it and that Whitlock would be selling drugs to him in Johnson
County and between him and Whitlock, they would split the money, and all I had
to do was wait for Jerry to have Whitlock call me.
6. Those instructions read:

 You are instructed that it is a defense to prosecution that a person engaged
in the conduct charged against him because he was induced to do so by a law
enforcement agent using persuasion or other means likely to cause persons to
commit the offense; however, conduct of law enforcement agents that merely
affords a person an opportunity to commit an offense does not constitute
entrapment.

 By the term "law enforcement agent" as used herein is meant personnel of
the state and local law enforcement agencies as well as of the United States and
any person acting in accordance with instructions from such agents.
7. On direct appeal appellant argued that the "instruction on 'law enforcement agent' only
instructed the jury on the undercover officer, Marshall Whitlock. But the jury should have also
been instructed that 'Jerry' constituted an agent of law enforcement, and that if the jury finds that
'Jerry' induced Appellant, it should find Appellant not guilty." Appellant filed, as his brief on
the merits to this court, the same brief he filed on direct appeal.
8. Vega v. State, 2012 WL 3799176, *1 (citations and footnotes omitted).
9. Id., n.1.
10. Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).
11. Delgado v. State, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).
12. Tex.Code Crim. Proc. art. 36.14. 
13. Taylor v. State, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011).
14. Posey v. State, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998).
15. Id. at 61.
16. Barrera v. State, 982 S.W.2d 415, 416-17 (Tex. Crim. App. 1998) (error to include
abstract self-defense instruction in the charge but fail to instruct the jury to acquit if it had a
reasonable doubt on self-defense).
17. Almanza, 686 S.W.2d at 171.
18. Id.
19. Barrera, 982 S.W.2d at 416 (citation omitted).
20. See supra note 6.
21. The State argues that, under the doctrine of invited error, appellant is estopped from
claiming that the court's charge was erroneous because he received the "exact jury instruction
[that] he had requested and had no further objection to it." State's Brief at 11. But the State
cannot point to any part of the record showing that the instruction given was requested and
neither can we. Under these circumstances, we will not assume appellant got the "exact jury
instruction [that] he had requested" and is now trying to "benefit from an error that was
committed at his behest." Trejo v. State, 280 S.W.3d 258, 260 (Tex. Crim. App. 2009); Tucker v.
State, 771 S.W.2d 523, 534 (1988). It may be that here, as in Barrera, the trial judge added the
entrapment instruction because he anticipated that appellant would request it.
22. The entrapment defense could apply only to the first drug delivery to Marshall
Whitlock on August 5th because appellant admitted that he was not "induced" by anyone to
make the second drug sale on August 19th, and he was not induced to possess the
methamphetamine found in his car after his arrest on August 19th. 
23. See generally, Vasquez v. State, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012)
(application paragraph must specify "all of the conditions to be met before a conviction under
such theory is authorized"); Plata v. State, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996) (noting
that jurors are not authorized to return a verdict "except under those conditions given by the
application paragraph of the charge").
24. The State has never suggested that "Jerry" was not a "law enforcement agent" under
Tex. Penal Code § 8.06. See Soto v. State, 681 S.W.2d 602, 606 (Tex. Crim. App. 1984)
(Clinton, J., dissenting) (that Cervantes was a "law enforcement agent" under Tex. Penal Code §
8.06 "is a matter accepted by all parties and the court, and upon that basis the cause was
presented and decided."). See also, Texas Criminal Pattern Jury Charges-Defenses, 140
(State Bar of Texas 2010) (setting out a sample charge submitting to the jury the question of
whether a private person was acting in accordance with instructions from law-enforcement
personnel).
25. Almanza, 686 S.W.2d at 171.
26. Vasquez, 389 S.W.3d at 368-69.
27. We here exercise our inherent authority to make an initial harm analysis because both
parties have fully briefed the issue of harm, and the record clearly demonstrates that the error is
harmless. See McDonald v. State, 179 S.W.3d 571, 580 (Tex. Crim. App. 2005) (Cochran, J.,
concurring) ("when the record clearly demonstrates that the error is obviously either harmful or
harmless . . . the time, money, and effort expended on a remand are not worth the candle of
comity and continued litigation").
28. The State argues that there was no error in the court's charge for these reasons. "Other
than Whitlock, the reference to being induced by 'persuasion or by any other means' necessarily
includes the confidential informant. Consequently, the jury charge was not erroneous for failing
to specifically list 'Jerry, a confidential informant' in the application paragraph." State's Brief at
11-12. 
29. State's Brief at 15.
30. See England v. State, 887 S.W.2d 902, 908 (Tex. Crim. App. 1994) (to prevail on
entrapment defense, evidence must show that police conduct was such that an ordinary law-abiding person would have been induced to commit the crime); Martinez v. State, 802 S.W.2d
334, 337 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd) (a suggestion by a law-enforcement
agent that the defendant sell illegal drugs to make money to pay off debts or avoid financial
hardship does not rise to level of entrapment).